[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-16613
_____

Agency No. A96-114-075

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 27, 2005
THOMAS K. KAHN
CLERK

MOHAMMED ZEESHAN ZAFAR,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

No. 04-16689
_____

Agency No. A96-114-077

AMIRMOHAMMED HABIB LAKHANI,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

No. 04-16750
_____

Agency No. A96-114-175

NIZAR GHULAMANI,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of Decisions of the
Board of Immigration Appeals
_____
(September 27, 2005)

Before ANDERSON, HULL and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Petitioners are living in the United States on expired visas. Separate removal proceedings were initiated against all three in March and April, 2003. Each moved for continuances while awaiting labor certifications. They filed petitions seeking review of the Board of Immigration Affairs' (BIA) summary affirmances of the immigration judges' denials of their motions to continue their removal proceedings. The government contends that this Court is without

2

jurisdiction to hear this case pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). We hold that we have jurisdiction under this statute to review the denials of motions to continue removal proceedings, but there was nonetheless no abuse of discretion in the immigration judges' decisions do so. We thus deny the petitions.

Petitioners Amirmohammed Habib Lakhani, Mohammed Zeeshan Zafar, and Nizar Ghulamani are natives and citizens of Pakistan. The facts and procedural histories of their individualized cases are set forth below.

### Amirmohammed Habib Lakhani

Lakhani entered the United States on or about July 9, 1995 as a nonimmigrant visitor authorized to remain in the country until August 10, 1995. On March 27, 2001, Lakhani filed an application for labor certification. On April 14, 2003, the Department of Homeland Security ("DHS") initiated removal proceedings against Lakhani, charging him as a nonimmigrant who remained in the United States longer than permitted pursuant to 8 U.S.C. § 1227(a)(1)(B). On July 16, 2003, Lakhani appeared in immigration court, where he admitted the factual allegations and conceded removability. Immigration Judge G. Mackenzie Rast, however, adjourned the matter until August 6, 2003 to ascertain what relief, if any, Lakhani would be seeking. At the August 6 hearing, Lakhani's counsel advised Judge Rast that Lakhani had a pending labor certification and requested that his removal be continued on that basis. Judge Rast denied that continuance ruling, "no statute [or] regulation [or] case authority which provides that it is appropriate for

3

the Court to continue cases under such circumstances.  Consequently the request for [a] continuance under such circumstances will be denied."  Judge Rast then ordered Lakhani removed from the United States.  The BIA summarily affirmed Judge Rast's decision.

## Mohammed Zeeshan Zafar

Zafar entered the United States on or about September 29, 2000, as a nonimmigrant visitor authorized to remain in the country until March 29, 2001.  On April 27, 2001, Zafar's father filed an application for labor certification.  On March 12, 2003, the DHS initiated removal proceedings against Zafar, charging him, like Lakhani, as a nonimmigrant who remained in the United States longer than permitted pursuant to 8 U.S.C. § 1227(a)(1)(B).  On July 16, 2003, Zafar appeared before the same immigration judge (Judge Rast) as Lakhani.  Zafar also admitted the factual allegations and conceded removability.  Similarly, Judge Rast adjourned the matter until August 6, 2003.  At that August 6 hearing, Zafar's counsel advised Judge Rast that Zafar's father was in removal proceedings and had a pending labor certification.  Counsel requested that Zafar's case be consolidated with his father's case.  Zafar argued that because he was then under the age of twenty-one, he might qualify as a derivative beneficiary of his father's employment-based visa petition if it was ultimately approved.  As such, Zafar moved the immigration court for a continuance until the disposition of his father's labor certification. Judge Rast found that there was:

> no case authority or statutory [or] regulatory authority which authorizes or suggests the appropriateness of a continuance where labor certification has not yet been approved by the labor authorities. In this particular case, the situation is twice removed from that process. Under the circumstances, the Court does not view it as appropriate that the matter be continued for such purposes.

Judge Rast then ordered Zafar removed from the United States to Pakistan. Zafar appealed that decision to the BIA, which summarily affirmed the IJ's decision.

### Nizar Ghulamani

Ghulamani entered the United States as a nonimmigrant visitor on June 7, 1997, with a visa authorizing him to stay in the country for no longer than six months. On April 30, 2001, Ghulamani filed an application for labor certification. On March 21, 2003, the DHS initiated removal proceedings pursuant to § 1227(a)(1)(B). On January 8, 2004, Ghulamani appeared before Immigration Judge Paul L. Johnson and also conceded removability. His counsel advised Judge Johnson that he had a pending labor certification and requested that his removal proceeding be continued on that basis as well. In a written decision, which was drafted and dated months prior to that hearing on September 25, 2003, the immigration judge denied Ghulamani's request for a continuance, finding, after oral arguments on the motion, that there was not the requisite good cause for continuance as provided in 8 C.F.R. § 1003.29. Judge Johnson found that the approval of a pending labor certification was "speculative" and did not entitle

5

Ghulamani to a continuance. The BIA affirmed the immigration judge's decision without opinion.

### **Jurisdiction to Review Denial of Motions to Continue Removal Proceedings**

The government contends that this Court lacks jurisdiction to review these petitions, which challenge the immigration judges' decisions to not continue the petitioners' removal proceedings. It directs us to the plain language of INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii) (2000), which states in relevant part, "Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General for which is specified under this subchapter to be in the discretion of the Attorney General." That is, it contends that because the granting of continuances are discretionary, this "door closing" statute strips this Court of jurisdiction to review them.

Petitioners contend, however, that an immigration judge's authority to grant a continuance is not directly found "under this subchapter," which is "SUBCHAPTER II" of chapter 12, Title 8, entitled "Aliens and Nationality," but instead is found in 8 C.F.R. § 1003.29, a federal regulation implemented by the Attorney General. Therefore, they argue, § 1252(a)(2)(B)(ii) does not prevent this Court from having jurisdiction to review their petitions.

We have jurisdiction to review an immigration judge's decision to deny a motion to continue a removal hearing. Section 1252(a)(2)(B)(ii) precludes our review of discretionary decisions of the Attorney General in *only* the specific

6

circumstances where the "decision or action of the Attorney General the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General . . .." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis supplied). The expressed authority of an immigration judge to grant or deny a motion to continue a hearing is *not* found under the particular "subchapter" where § 1252(a)(2)(B)(ii) is contained, which is "SUBCHAPTER II" of chapter 12, Title 8, entitled "Aliens and Nationality." *See generally*, 8 U.S.C., ch. 12 (entitled, "Immigration and Nationality"). Instead, the authority of an immigration judge to grant a motion for continuance is derived solely from regulations promulgated by the INS. *See* 8 C.F.R. § 1003.29 (stating that "[t]he immigration judge may grant a motion for continuance for good cause shown").

The phrase "specified under this subchapter" refers to subchapter II of Chapter 12, 8 U.S.C. §§ 1151–1378. *See Yerkovich v. Ashcroft*, 381 F.3d 990, 992 (10th Cir. 2004). Congress has precisely carved-out the statutorily-provided discretionary powers of the Attorney General within 8 U.S.C. sections 1151 through 1378 and, in turn, has expressly prohibited "any court" from reviewing them. There are myriad Congressionally-defined, discretionary *statutory* powers of the Attorney General articulated within sections 1151 through 1378. For example, the "Attorney General in his discretion" may waive particular visa or passport requirements. *See, e.g.,* 8 U.S.C. § 1184(d) (2000) (noting that the "Attorney General *in his discretion* may waive the requirement that the parties

7

have previously met in person") (emphasis supplied); 8 U.S.C. § 1181(b) (2000) (noting that the "Attorney General *in his discretion*" may readmit individual "without being required to obtain a passport . . .") (emphasis supplied). The Attorney General also "may authorize immigration officers" to record, among other things, the names, age and sex of "every resident person leaving the United States by way of the Canadian or Mexican borders for permanent residence in a foreign country." 8 U.S.C. § 1221(c). Although not before us, these discretionary decisions – statutory authority for which Congress "specified under" subchapter II – of the Attorney General would presumably not be reviewable by "any court" under the jurisdictional-stripping provisions of § 1252(a)(2)(b)(ii).

The discretionary decisions exercised here by the immigration judges to not continue the removal hearings were not "specified" under subchapter II of chapter 12, title 8, by Congress. The government does not cite, nor have we so identified, any expressed authority stating the immigration judge's authority to continue a removal proceeding is "specified under" subchapter II. Instead, the parties seem to be in agreement that this "discretion" is administratively-determined and proscribed to the immigration judges via 8 C.F.R. § 1003.29, a federal regulation implemented by the Attorney General. Since only the particular discretionary authorities of the Attorney General expressly "specified" in sections 1151 through 1378 are barred from our review under § 1252(a)(2)(b)(ii), and the discretionary authority to grant or deny a continuance in removal proceedings is not expressly contained within

sections 1151 through 1378, we have jurisdiction to review those discretionary decisions. *See Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005) (jurisdiction under § 1252(a)(2)(B)(ii) to review denial of BIA's discretionary motion to reopen because the BIA had not exercised any statutorily provided discretion under the subchapter of title 8 governing immigration proceedings, but instead had exercised discretion as "delineated" by a regulation of the Attorney General); *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528–29 (9th Cir. 2004) (same); *see also Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004) (finding jurisdiction to review denial of motion to continue removal proceedings under § 1252(a)(2)(B), but also finding an abuse of discretion in denying continuance); *but see Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004) (dismissing petition, and holding that "8 U.S.C. § 1252(a)(2)(B)(ii) bars review of the [immigration judge's] discretionary decision denying petitioner's motion for a continuance"); *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004) (same); *Koenig v. INS*, 64 Fed. Appx. 996, 998 (6th Cir. 2003) (unpublished) (holding that "this court lacks jurisdiction to review what was a purely discretionary decision of the immigration judge").

Our decision is further supported by the "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Because denials of motions to continue are not statutorily-proscribed discretionary acts "specified under this subsection" to the Attorney General, as enumerated in § 1252(a)(2)(B)(ii), we have jurisdiction to review them.

9

## The Immigration Judges Did Not Abuse Their Discretion

Although we have jurisdiction under § 1252(a)(2)(B)(ii), the immigration judges nonetheless did not abuse their discretion by denying petitioners' motions for continuances to await decisions on their pending requests for labor certifications. The grant of a continuance is within the immigration judges' broad discretion. *See Olvera v. INS*, 504 F.2d 1372, 1374 (5th Cir. 1974); *see also Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997) ("The grant of a continuance of a deportation hearing lies within the sound discretion of the immigration judge, who may grant a continuance upon a showing of good cause."). Section 245(i) of the INA, 8 U.S.C. § 1255(i)(1), permits a certain class of aliens who were otherwise *ineligible* to adjust their temporary resident status in the United States to pay a penalty fee for adjusting their status to that of a "permanent resident" and be considered "grandfathered" into the United States, if he is the "beneficiary" of an application for labor certification that was properly filed by April 30, 2001, and was "approvable when filed." INA § 245(i)(1), 8 C.F.R. § 245.10(a)(1)(i)(B). "Approvable when filed means that, as of the date of the filing," the application for labor certification was "properly filed, meritorious in fact, and non-frivolous . . .." 8 C.F.R. § 245.10(a)(3). Once the Attorney General receives the application for adjustment of status and the appropriate fee, he "may" adjust the status if the alien "is eligible to receive an immigrant visa and is admissible," and "an immigrant visa

10

is immediately available to the alien at the time the application is filed."

INA 245(i)(2), 8 U.S.C. § 1255(i)(2). An immigrant visa cannot, however, be issued to the alien until the labor certification is approved. INA § 203(b)(3)(C), 8 U.S.C. § 1182(a)(5); *see generally In re H-A*, 22 I & N Dec. 728, 741 (BIA 1999) (explaining that "applications for adjustment of status that could not be simultaneously filed because to file for third-preference status required prior approval by the United States Department of Labor of labor certification").

Here, since all that the petitioners offered the immigration judges was the "speculative" possibility that at some point in the *future* they *may* receive, or in Zafar's case, his father *may* receive, labor certification, petitioners have failed to demonstrate that they had a *visa petition* "immediately available" to them because they could not have filed an "approvable" visa petition without the labor certification in the first place, which is a prerequisite for relief under 8 U.S.C. § 1255(i) and 8 C.F.R. § 245.10(a)(3). *See, e.g., Oluyemi v. INS*, 902 F.2d 1032, 1034 (1st Cir. 1990). At the time of the immigration judges' denials of the petitioners' motions to continue their removal proceedings, it is clear that the petitioners were ineligible for adjustments to permanent resident status under § 1255(i) and there thus were no visas "immediately available" to them. *See Onyeme v. INS*, 146 F.3d 227, 234 (4th Cir. 1998) (finding no abuse of discretion in BIA's affirmance of immigration judge's denial of motion to continue deportation

11

proceedings where petitioner had not met all statutory requirements for adjustment of status); *Oluyemi,* 902 F.2d at 1034 (same); *see generally United States v. McCutcheon*, 86 F.3d 187, 190 (11th Cir. 1996) (noting that trial judge's discretionary decision to deny motion to sever trial was to be reviewed by this Court on appeal by viewing the case as it appeared to the trial judge "*at that time*") (emphasis supplied).  Based on this record, there was no abuse of discretion in denying their motions to continue their removal proceedings.

## No Due Process or Equal Protection Violations

Even if we did not have jurisdiction, we would still have jurisdiction to review substantial constitutional claims.  *See Moore v. Ashcroft*, 251 F.3d 919, 923–94 (11th Cir. 2001).  Petitioners assert violations of both their due process and equal protection rights.

Petitioners argue that their due process rights were violated when the immigration judges did not continue their removal proceedings long enough for them to meet all the necessary requirements for adjustment of status.  There is no constitutionally protected right to discretionary relief, which is the relief requested here.  *See Tefel v. Reno*, 180 F.3d 1286, 1300 (11th Cir. 1999).

Petitioners' equal protection rights were not violated by being required to be registered in the National Security Entry-Exit Registration System, which they argue precipitated them being placed in these *discretionary* removal proceedings by

12

the Attorney General, where other non-Pakistani citizens were not so required to register. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489–92 (1999) (finding that the INS retains inherent prosecutorial discretion as to whether to bring removal proceedings). There is no support in the record for this argument. Petitioners neither cite, nor have we identified, any case supporting their second equal protection argument that "in other jurisdictions" immigration judges "routinely administratively close proceedings where the beneficiary has a pending section 245(i) labor certifications, however in Atlanta they did not." We reject this equal protection argument as well.

The petitions are therefore

**DENIED.**