[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2006
THOMAS K. KAHN
CLERK

No. 05-14348
Non-Argument Calendar

_____

Agency No. A95-885-523

MARIO ENRIQUE RESTREPO NAMEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 17, 2006)**

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Mario Enrique Restrepo Namen, through counsel, petitions for review of the Board of Immigration Appeals' ("BIA's") order denying his motion to reconsider and/or reopen immigration proceedings following the BIA's affirmance of the immigration judge's ("IJ's") decision ordering removal and denying Restrepo's application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231, and for withholding of removal under the United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1241(b)(3), 8 C.F.R. § 208.16(c). Restrepo argues on appeal that the BIA abused its discretion in denying this motion to reconsider and/or reopen.[1] For the reasons set forth more fully below, we deny Namen's petition.

On September 16, 2001, Restrepo, a native and citizen of Colombia, was admitted into the United States with a student visa, pursuant to INA § 101(a)(15)(F), 8 U.S.C. § 1101(a)(15)(F), to attend school in Miami Beach, Florida. On January 7, 2002, Restrepo stopped attending that school. Thus, on

---

[1] To the extent Restrepo's arguments can be construed as challenging the BIA's final order of removal against Restrepo, which issued on March 31, 2005, he failed to file a timely petition for review from that order; thus, we lack jurisdiction to review it. See 8 U.S.C. § 1252(b)(1) (petition for review must be filed within 30 days of the date of the final order of removal); see also Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005) (explaining that the statutory deadline for filing a petition for review in an immigration proceeding is "mandatory and jurisdictional," and that it is not suspended or tolled by the fact that a petitioner files a timely motion to reopen the removal proceedings).

2

October 7, 2002, the former Immigration and Naturalization Service ("INS")[2] issued a Notice to Appear, charging Restrepo with removability, pursuant to INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i), as an alien who did not comply with the conditions of the non-immigrant status under which he was admitted.

During a hearing before the IJ, Restrepo conceded removability as charged. He, however, filed an application for asylum and withholding of removal under the INA, and for withholding of removal under the CAT. In this application, he alleged that he had suffered past persecution and had a well-founded fear of future persecution and torture on the part of "guerillas," due to his membership in the Conservative Political Party.

On November 5, 2003, at an evidentiary hearing on this application, at which Restrepo was represented by counsel, Restrepo, who was the only witness, testified that he was 25 years old at the time of the hearing, was single, and had no children. All of his family, other than a sister who was living in the United States, still lived in Colombia.[3] As a member of the Conservative Political Party in

---

[2] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. This legislation created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS still was in existence, we will refer to the agency as the INS.

[3] Restrepo testified that his father was murdered in 1989, and that he believed that members of the Revolutionary Armed Forces of Colombia ("FARC"), a guerilla organization, had been responsible. Restrepo, however, conceded that he " d[id] not know exactly" who

Colombia from 1999 until he came to the United States in September 2001, Restrepo helped Luiz Umberto Gomez-Gallo, the Senator for the Department of Tolima, with various campaigns Gomez-Gallo was undertaking. Restrepo's participation lasted from 1999 until 2001, and it included two specific campaign trips in 1999 and 2000.

In October 1999, Restrepo's mother received a telephone call, during which a person who identified himself as a FARC guerilla (1) asked for Restrepo, and (2) told Restrepo's mother to "shut her son's mouth up[,] or, if not, there would be grave consequences." One month later, in November 1999, a bomb exploded in a beauty shop that Restrepo was opening, and that was owned by Restrepo's mother. Although the police had not determined who set the bomb, Restrepo's family believed that it had been the work of FARC guerillas.

Furthermore, Restrepo testified that, in August 2001, at approximately 2:30 a.m., while Restrepo was traveling in a vehicle with a friend from Tolima, Colombia, to Bogota, Colombia, Restrepo and his friend stopped at a checkpoint that they learned was being operated by the members of the FARC. These members removed Restrepo and his friend from the vehicle, placed them in another vehicle, and drove them for approximately 20 minutes to a hut. When they reached

---

murdered his father.

4

this hut, the FARC members threatened to kill Restrepo and his friend if they moved. After waiting for approximately two hours, Restrepo and his friend realized that no-one else was around the hut. They then walked away from the hut, towards the road, and they took a taxi to Restrepo's grandfather's home in Tolima.

Restrepo explained that he had come to the United States in September 2001, to escape persecution by members of the FARC, and because he feared that he might be killed. Restrepo also testified on cross-examination that members of the FARC had caused him mental harm. He, however, stated that he had not attempted to relocate within Colombia because he assumed that members of the FARC would find him in any part of Colombia.

In an oral decision, the IJ found Restrepo removable, denied his application for relief from removal, and ordered him removed to Colombia. In denying Restrepo relief from removal, the IJ explained that Restrepo was not eligible for asylum because he had failed to show a causal link between his membership in, and work with, the Conservative Party and his alleged incidents of past persecution. The IJ discussed that, although Restrepo believed that members of the FARC had murdered his father in 1989, this belief was unsubstantiated. The IJ noted that, even though Restrepo believed that members of the FARC were responsible for bombing his mother's beauty salon, he offered no evidence

5

supporting this belief, and his testimony was "inadequate" for the IJ to draw this connection. Similarly, the IJ explained that the fact that Restrepo was told to "keep his mouth shut" during his detention in August 2001, did not establish this necessary link.

The IJ also at least implied that Restrepo's fear of future persecution was belied by the fact that Restrepo's family has continued living in Colombia without problems. Additionally, the IJ noted that Restrepo had not shown that he could not relocate within Colombia. Thus, the IJ determined that Restrepo had failed to show that he was eligible for asylum by establishing either past persecution, or a well-founded fear of future persecution if he returned to Colombia.[4] The IJ also determined that Restrepo could not meet the higher burden for showing eligibility for withholding of removal. Finally, the IJ found that Restrepo was not entitled to CAT relief because he "ha[d] not been tortured by or with the acquiescence of a public official or a person acting in an official capacity in Colombia[.]"

---

[4] In finding Restrepo ineligible for asylum, the IJ noted that "there is a credibility question as to whether or not the respondent can be considered a credible witness." However, the government has not argued, and we do not conclude, that this statement qualified as an adverse credibility determination that was determinative. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (concluding that, although the IJ made a reference to the petitioner's claims as a "ridiculous fabrication," and the IJ stated that the petitioner's testimony was "extremely inconsistent and [made] absolutely no sense whatsoever," these statements did not clearly show that the IJ disbelieved the petitioner and, thus, did not constitute an adverse credibility determination that was dispositive on appeal).

On March 31, 2005, after Restrepo appealed the IJ's decision, the BIA affirmed the IJ's decision and dismissed Restrepo's appeal. The BIA determined that, as the IJ had found, Restrepo had failed to establish past persecution based on his political opinion or membership in the Conservative Party. The BIA also noted that (1) Restrepo had not claimed that he had been harmed, or that he had attempted to relocate within Colombia, and (2) "[t]here [was] no nexus between the party membership and the bombing of [Restrepo's] mother's beauty salon."

Restrepo did not file a petition for review of this order. Instead, on April 28, 2005, he filed the instant pleading, which should be construed as a motion to reconsider and/or reopen the proceedings. In this pleading, Restrepo asserted that he had (1) "established that he [was] unwilling and unable to return to his native country [of] Colombia because of actual past persecution to his family on account of his political opinion and that he ha[d] a well-founded fear of persecution based on his severe past persecution in his country" (2) "demonstrated that due to his direct political opinion, his life [was] at risk at the hands of the FARC guerillas in Colombia"; and (3) established that he could not relocate to another city in Colombia because members of the FARC are strongly armed. In support of this last contention, Restrepo also attached a report from the United Nations High Commissioner for Refugees, which was dated September 2002, and which

7

indicated that relocating within Colombia may not be an alternative available to avoid persecution. ("2002 U.N. Report").[5]

On July 11, 2005, the BIA entered an order denying Restrepo's motion to reconsider and/or reopen. In support, the BIA explained that it was "not convinced that [it had] misinterpreted vital facts in the case or misapplied pertinent law to the facts." The BIA noted that Restrepo's membership in Conservative Party in Colombia did not, in and of itself, warrant relief from removal to Colombia, and that Restrepo had failed to show that he could not avoid future persecution by relocating within Colombia. Furthermore, the BIA discussed that the 2002 U.N. Report was not "new and material" because (1) it could have been submitted at Restrepo's evidentiary hearing, (2) did not directly pertain to Restrepo, and (3) and did not show that the government would be unable to protect Restrepo throughout the whole country.

Restrepo generally argues on appeal, without explaining, that the BIA erred in denying his motion to reopen and/or reconsider because it did not use "its own independent judgment." Restrepo also implies that the BIA erred because the 2002 U.N. Report that he wished to introduce if his proceedings were reopened reflected

_____

[5] In addition to discussing the "current situation in Colombia," the 2002 U.N. Report specifically concluded that "[d]ecision-makers are therefore generally advised not to apply the notion of internal relocation alternative when assessing international protection claims in relation to Colombia."

8

that he could not relocate within Colombia. Restrepo contends that this denial was in error because he established in front of the IJ (1) past persecution by a group that the government of Colombia cannot control, (2) that this persecution was on account of his political opinion, and (3) that he had a well-founded fear of future persecution. Finally, Restrepo generally argues that the BIA and the IJ failed to consider "all of the relevant evidence," and that his life will be "placed at risk" if he is removed to Colombia.

Within 30 days of the BIA entering its final order of removal, Restrepo was permitted to seek reconsideration on the ground that the BIA had made a legal or factual error. See INA § 240(c)(6), 8 U.S.C. § 1229a(c)(6); 8 C.F.R. § 1003.2(b)(1). Moreover, within 90 days of the entry of the BIA's final order of removal, Restrepo could move the BIA to reopen the removal proceedings for the submission of new evidence. See INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(1). Our review of the BIA's denial of both of these motions is for an abuse of discretion. See Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1341 (11th Cir. 2003) (reconsideration); see also Dakane, 399 F.3d at 1272 n.2 (reopen).

"In this particular area, the BIA's discretion is quite broad." Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1220 (11th Cir. 2003) (reviewing denial of a motion to reopen). "Judicial review of denials of discretionary relief incident to [removal]

9

proceedings . . . is limited to determining 'whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious.'" Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (internal quotation omitted). The Supreme Court has explained that these motions are disfavored, especially in removal proceedings, because, as a general matter, "every delay works to the advantage of the [removable] alien who wishes merely to remain in the United States." I.N.S. v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724-25, 116 L.Ed.2d 823 (1992) (discussing a motion to reopen).

A proper motion for reconsideration "shall specify the errors of fact or law in the prior [BIA] decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). In the instant case, Restrepo failed to identify in his motion for reconsideration any specific legal or factual errors on the part of the BIA in dismissing Restrepo's appeal of the IJ's decision. Indeed, Restrepo's general arguments in his motion for reconsideration were arguments that he either made, or should have made, in his initial brief before the BIA.

As discussed above, Restrepo generally argues on appeal that the BIA failed to use "its own independent judgment." He, however, has failed to cite to legal authority or support in the record for this argument. See Zafar v. U.S. Att'y Gen., 426 F.3d 1330, 1336 (11th Cir. 2005) (rejecting constitutional challenge where

10

petitioners neither cited to legal authority, nor support in the record, for their challenge).  Furthermore, although Restrepo generally is arguing on appeal that the BIA failed to consider "all of the relevant evidence," he has failed to identify either in his motion, or on appeal, what evidence he believes the BIA either ignored or mis-construed.

To the extent Restrepo generally asserted in his motion for reconsideration that he established that his alleged past persecution was causally connected with his participation as a member of the Conservative Party, the BIA correctly stated in denying this motion that evidence in the record showing that Restrepo participated as a member of the Conservative Party did not, by itself, establish that his alleged persecution was causally linked with this participation.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001) (asylum applicant must present "specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of [a protected ground]") (emphasis in original).  Indeed, even if Restrepo had established that he could not relocate within Colombia, he could not establish eligibility for either asylum or withholding of removal without showing a causal connection with a protected ground.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 n.7 (11th Cir. 2005) (affirming the IJ's denial of asylum despite evidence in the relevant country reports that guerillas exercised an

11

influence throughout Colombia because the petitioner had failed to establish that she would be singled out for persecution on account of a protected ground). Thus, Restrepo did not specify, or even generally identify, any "errors of fact or law" in the BIA's prior decision dismissing Restrepo's appeal from the IJ's decision. See 8 C.F.R. § 1003.2(b)(1).

Finally, to the extent Restrepo was moving to reopen the proceedings, the regulations provide that such a motion "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." See 8 C.F.R. § 1003.2(c)(1). Restrepo failed to cite to evidence in his motion that he could not have presented during his counseled evidentiary hearing. Assuming that the 2002 U.N. Report that Restrepo attached to his motion was material, this evidence was in existence in November 2003, when the IJ conducted Restrepo's evidentiary hearing.[6] Moreover, as the applicant, Restrepo carried the burden during this evidentiary hearing of proving his eligibility for relief from removal. See 8 C.F.R. § 208.13(a) (asylum); 8 C.F.R. § 208.16(b), (c)(2) (withholding of removal under

---

[6] In comparison, we recently determined in Balogun v. U.S. Att'y Gen., 425 F.3d 1356 (11th Cir. 2005), that a petitioner presented new evidence that was not available at his former hearing by producing proof that, six days after the BIA issued its final order of removal, the State of Alabama had granted him an unconditional pardon for convictions that had rendered him inadmissible. See id. at 1362. Nevertheless, we denied his petition for review because, under the applicable statute, the issue of whether he had been pardoned was not material to whether he was inadmissible. See id. at 1362-63.

12

the INA and withholding of removal under the CAT). Thus, Restrepo failed to

show that this evidence was "not available and could not have been discovered or

presented" at the time of his asylum hearing. See 8 C.F.R. § 1003.2(c)(1).

Accordingly, we conclude that the BIA did not abuse its discretion in

denying Restrepo's motion, either to the extent he was seeking reconsideration or

reopening of the removal proceedings. We, therefore, deny Restrepo's petition for

review.

**PETITION DENIED.**