[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2006
THOMAS K. KAHN
CLERK

No. 05-13198
Non-Argument Calendar
_____

BIA No. A77-574-594

ATTADA PASSE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

**(March 24, 2006)**

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Attada Passe, through counsel, petitions for review of the Board of

Immigration Appeals' ("BIA's") order affirming the immigration judge's ("IJ's)

decision denying his motion to continue his removal proceedings pending

adjudication of a second petition for an immediate relative visa ("I-130 visa").

Passe contends that the IJ's denial of this motion was an abuse of discretion. For

the reasons set forth more fully below, we deny Passe's petition.

In April 1996, Passe, a native and citizen of Thailand, was admitted into the

United States with a non-immigrant B-2 visitor's visa, with permission to remain

in the United States until October 5, 1996. Passe, however, remained in the United

States past this date, along with his father and brother. Thus, in April 2003, the

former Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear

("NTA"), charging Passe with removability, pursuant to INA § 237(a)(1)(B), 8

U.S.C. § 1227(a)(1)(B), for being an alien who remained in the United States for a

time longer than permitted.

In September 2003, during a preliminary removal hearing before the IJ,

Passe, through counsel, conceded removability as charged. Passe, however, moved

for a continuance of his removal proceedings, arguing that his father had married a

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. This legislation created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS still was in existence, this memorandum refers to the agency as the INS.

United States citizen, and Passe's step-mother had filed on his behalf a petition for

an I-130 visa. Although the IJ noted that the I-130 visa petition had been denied,

resulting in the present removal proceedings, the IJ granted Passe a two-month

continuance for Passe's counsel to determine if an appeal of this denial was

pending.

In November 2003, when Passe's removal proceedings re-convened, Passe

moved for another continuance, explaining that he had pending a second petition

for an I-130 visa, as well as his own application for adjustment of status ("I-485

application").[2] In a supporting written motion, Passe cited to the BIA's decision in

Matter of Garcia, 16 I & N Dec. 653 (BIA 1978), modified by, Matter of Arthur,

20 I & N Dec. 475 (BIA 1992), and he argued that, although the first I-130 visa

petition his step-mother had filed on his behalf had been denied because the INS

had found invalid her marriage to Passe's father, this denial was based on

insufficient evidence, instead of fraud. The government opposed this motion,

responding that Passe's mother had not appealed the denial in September 2002, of

---

[2] Because Passe was relying on his status as a minor step-child of a United States citizen, his step-mother had to successfully petition for an immediate relative visa on his behalf. See 8 C.F.R. § 204.2(d)(2)(iv). Moreover, either simultaneously with, or subsequent to, the filing of this I-130 visa, Passe had to apply for adjustment of his non-immigrant status. See INA § 245(a), 8 U.S.C. § 1255(a). To establish entitlement to adjustment of status, Passe had to show that (1) he had applied for an adjustment of status, (2) he was eligible to receive an immigrant visa and was admissible to the United States for permanent residence, and (3) an immigrant visa was immediately available to him at the time his application was filed. See id.

her first petition for an I-130 visa.[3] Passe replied that his step-mother had submitted additional unidentified evidence in support of her second petition for an I-130 visa in June 2003.

That same day, the IJ issued an oral decision, denying Passe's request for a continuance of his removal proceedings. The IJ explained that, in addition to the fact that Passe was relying on a second petition for an I-130 visa, the denial of the first petition had not been appealed. The IJ also reasoned as follows:

> Were there to be an 'automatic' continuance every time a new I-130 [visa petition] was filed[,] irrespective of the fate of an earlier [petition] then in effect, an individual could perpetrate proceedings before this Court ad infinitum simply by the expedient of continuing to file I-130s without regard to the denial of earlier such petitions.

In May 2005, the BIA adopted the IJ's decision and dismissed Passe's appeal. The BIA also explained that the IJ did not abuse his discretion in denying Passe's motion for a continuance because: (1) the unapproved second petition for an I-130 visa in the instant case was not an adequate basis for a continuance, especially in light of the previously denied visa petition; and (2) the BIA's prior decision in Garcia did not establish an "inflexible rule" requiring IJs in all cases to continue removal proceedings pending adjudication of related visa petitions.

---

[3] The record reflects that the first I-130 petition that was filed on Passe's behalf was filed in May 1999 and denied in September 2002, and that Passe's I-485 application to register permanent residence or adjust status, based upon the filing of the I-130 petition, was filed in February 2001 and denied in December 2002.

Passe argues on appeal that the IJ abused his discretion in denying Passe's motion for a continuance of his removal proceedings. Relying on the BIA's decisions in In re Garcia and In re Velarde-Pacheco, 23 I & N Dec. 253 (BIA 2002), and on this Court's decision in Bull v. I.N.S., 790 F.2d 869 (11th Cir. 1986), Passe specifically contends that "it has long been the policy of the [INS] to allow qualified beneficiaries to remain in the United States pending final adjudication of their petitions and applications for adjustment of status," and that he and his family should have had the opportunity to present all of his evidence through the second I-130 petition. Passe asserts that an abuse of discretion is evident from documents he has attached to his appellate brief, which he asserts show that his father was granted a continuance of his removal proceedings based on this same I-130 petition.[4] Passe also contends that a continuance was warranted because, despite that the first I-130 petition had been denied and no appeal had been taken from that denial, the second petition for an I-130 visa would be granted.

As a preliminary matter, we are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005) (quotation omitted). "Notwithstanding

---

[4] Passe has attached to his appellate brief (1) a memorandum supporting his father's motion for a continuance of his removal proceedings, filed March 16, 2005; and (2) a notice of hearing in removal proceedings, reflecting that his father has scheduled a "Master Individual hearing" before an IJ in May 2006.

any other provision of law . . . no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii). We, however, have determined that § 1252(a)(2)(B)(ii) precludes our review of discretionary decisions of the Attorney General in only the specific circumstances where the decision or action of the Attorney General is specified in this subchapter, and that the express authority of an IJ to grant or deny a motion to continue a hearing is not contained in this subchapter. Zafar v. U.S. Att'y Gen., 426 F.3d 1330, 1334 (11th Cir. 2005). Thus, we concluded in Zafar that we had jurisdiction to review an IJ's discretionary denial of a motion to continue removal proceedings. Id. at 1334-35. Similarly, we conclude that we have subject-matter jurisdiction to review the IJ's decision to deny Passe's motion for a continuance pending resolution of his visa proceedings.

The IJ has discretion to grant a continuance in an immigration proceeding "for good cause shown." 8 C.F.R. § 1003.29. The grant of a continuance is within the IJ's "broad discretion." Zafar, 426 F.3d at 1335. "Judicial review of denials of discretionary relief incident to [removal] proceedings . . . is limited to determining 'whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious.'" Garcia-Mir v. Smith, 766

F.2d 1478, 1490 (11th Cir. 1985) (internal quotation omitted) (reviewing denials of motions to reopen).  Indeed, in discussing analogous denials of motions to reopen, the Supreme Court has explained that motions to reopen are disfavored, especially in removal proceedings, because, as a general matter, "every delay works to the advantage of the [removable] alien who wishes merely to remain in the United States."  I.N.S. v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724-25, 116 L.Ed.2d 823 (1992).

In Garcia, the BIA set forth an exception to the general rule that deportation proceedings need not be continued, or reopened following an order of deportation, where: (1) there was pending an immigrant visa petition, filed on the alien's behalf, along with an adjustment of status application; and (2) the visa petition and the status-adjustment application were "prima facie" approvable.  See Garcia, 16 I & N Dec. at 656-57.[5]  The BIA, however, cautioned in Garcia:

> We do not intend, by our holding, to establish an inflexible rule
> requiring the [IJ] in all cases to continue the deportation proceedings
> at the initial hearing or to remand . . ..  It clearly would not be an
> abuse of discretion for the [IJ] to summarily deny a request for a

[5] In response to certain amendments to the INA in 1986 and 1990, which were aimed at discouraging fraudulent marriages for immigration purposes, Garcia was modified in 1992 by the BIA's decision in Arthur, whereby Garcia's presumption in favor of a continuance for consideration of applications for adjustment of status based upon pending visa petitions now does not apply to visa petitions based on marriages that were entered into following the commencement of removal proceedings against the petitioners.  See Arthur, 20 I & N Dec. at 479.  In this case, however, the second petition that was pending at the time the IJ denied Passe a continuance was based on a marriage that occurred prior to commencement of removal proceedings against him.  Thus, Arthur's modification of Garcia is not applicable.

7

> continuance . . . upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the [visa] petition.

See id. at 657. Similarly, in In re Velardo-Pacheco, another BIA decision relied on by Passe, the BIA clarified that IJs were not required "to reopen proceedings pending adjudication of an I-130 visa petition in every case," and that they still could deny such motions if they determined that a respondent's visa petition was frivolous or that adjustment would be denied in any event, either on statutory grounds or in the exercise of discretion. See In re Velardo-Pacheco, 23 I & N Dec. at 257.

Citing to Garcia, we discussed in Bull that the normal procedure, where a petition and adjustment application had been accepted for processing prior to the issuance of an Order to Show Cause, was to hold an adjustment application in abeyance pending final adjudication of the visa petition. See Bull, 790 F.2d at 871. We, however, also explicitly noted the BIA's caution in Garcia that it did not intend to create an "inflexible rule requiring [IJs] in all cases to continue the deportation proceedings." See id. at 872. Thus, we explained that the IJ's denial of a request for a continuance based upon the IJ's conclusion that the petitioner's guilty plea made him statutorily ineligible for adjustment of status would not have been an abuse of discretion were that legal conclusion correct. See id.

8

Nevertheless, because the IJ's denial was based on an incorrect legal conclusion, and because neither the IJ, nor the BIA in affirming the IJ's denial of the continuance, discussed any alternative reasons for this denial, we concluded in Bull that an abuse of discretion had occurred. See id. at 872-73.

Most recently, in Zafar, we examined in an analogous situation whether IJs abused their discretion in denying petitioners' motions for continuances to await decisions in their pending requests for labor certifications when the petitioners only offered the "speculative" possibility that, at some point in the future they might receive labor certification.[6] See Zafar, 426 F.3d at 1335-36. We explained that the petitioners could not have filed an "approvable" visa petition without the labor certification and, thus, had failed to demonstrate that they had a visa petition "immediately available" to them and that they were eligible for adjustment to permanent resident status. See id. at 1336. We, therefore, concluded that the IJs

---

[6] Certain aliens who are otherwise ineligible to adjust their temporary resident status in the United States are permitted to pay a penalty fee for adjusting their status to that of a "permanent resident" and to be considered "grandfathered" into the United States if he is the "beneficiary" of an application for labor certification that was properly filed by April 20, 2001, and that was "approvable when filed." See INA § 245(i)(1), 8 C.F.R. § 245.10(a)(1)(i)(B). "Approvable when filed means that, as of the date of the filing," the application for labor certification was "properly filed, meritorious in fact, and non-frivolous . . .." See 8 C.F.R. § 245.10(a)(3). Once the Attorney General receives the application for adjustment of status and the appropriate fee, he "may" adjust the status if the alien is "eligible to receive an immigrant visa and is admissible," and "an immigrant visa is immediately available to the alien at the time the application is filed." See INA § 245(i)(2), 8 U.S.C. § 1255(i)(2). An immigrant visa, however, cannot be issued to the alien until the labor certification is approved. See INA § 203(b)(3)(C), 8 U.S.C. § 1182(a)(5).

did not abuse their discretion in denying the petitioners' motions to continue their removal proceedings.  See id.

Unlike the facts in Bull, in denying Passe's motion for a continuance, the IJ did not rely on an incorrect legal conclusion; instead, the IJ explained that Passe was relying on a second I-130 visa petition, that the first petition had been denied, and that the denial of this first petition had not been appealed.  The IJ also explained that, if he exercised his discretion in granting continuances under these facts, petitioners could continue removal proceedings indefinitely by repeatedly filing petitions for I-130 visas.  Similarly, the BIA discussed that the pending unapproved second petition for an I-130 visa in this case was not an adequate basis for a continuance, especially in light of the previously denied visa petition.

Indeed, Passe conceded during his removal proceeding that the first I-130 petition had been denied.  Moreover, although Passe asserted in his motion for a continuance that his step-mother had included additional supporting evidence in the second I-130 petition, he did not explain what this evidence included.  Thus, similar to the facts in Zafar, Passe only offered the "speculative" possibility that, at some point in the future, the second I-130 visa application might be approved and he might receive adjustment of status.[7]  See Zafar, 426 F.3d at 1335-36.

_____

[7] To the extent Passe is arguing on appeal that the IJ abused his discretion because Passe's father was granted a continuance of his removal proceedings based on the pending I-130 petition in this case, and he has attached to his brief documentation that he claims supports this

10

Accordingly, we conclude that the IJ's determination that Passe failed to show "good cause" for a continuance and, thus, his decision not to exercise his discretion in granting a continuance, was not "arbitrary or capricious." See 8 C.F.R. § 1003.29; see also Garcia-Mir, 766 F.2d at 1490. We, therefore, deny Passe's petition for review.

**PETITION DENIED.**

---

argument, we may not consider evidence that was not part of the administrative record, see Al Najjar v. Ashcroft, 257 F.3d 1262, 1278 (11th Cir. 2001) (holding that we "cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below").