United States Court of Appeals
Fifth Circuit

**F I L E D**

April 24, 2006

Charles R. Fulbruge III
Clerk

REVISED JUNE 2, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60032

_____

MUSHTAQ AHMED,

Petitioner

v.

ALBERTO R. GONZALES, United States Attorney General,

Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
No. 79-008-192

_____

Before JONES, Chief Judge, and KING and DENNIS, Circuit Judges.

KING, Circuit Judge:

Petitioner Mushtaq Ahmed petitions this court for review of a final order of removal by the Board of Immigration Appeals. In its order, the Board of Immigration Appeals also affirmed an immigration judge's refusal to continue Ahmed's removal proceedings. Ahmed now argues that the Board erred in affirming both the immigration judge's refusal to continue his removal proceedings and the order of removal. For the following reasons, we DENY the petition for review.

## I.  BACKGROUND

Petitioner Mushtaq Ahmed ("Ahmed"), is a fifty-two-year-old citizen and native of Pakistan, who was admitted to the United States on August 21, 2000, as a nonimmigrant crewman.  Ahmed's visa allowed him to remain in the United States for a period not to exceed twenty-nine days.  Ahmed did not seek an extension of this period.  Instead, he remained in the United States without authorization after his visa expired.

On April 26, 2001, American Rags, Inc. ("American Rags"), filed an application for labor certification with the Department of Labor on Ahmed's behalf.  Subsequently, Ahmed registered in the special registration program of the National Security Entry/Exit Registration System ("NSEERS"), as required by law for male nonimmigrants from certain countries, including Pakistan.[1]  On April 24, 2003, the Department of Homeland Security ("DHS") initiated removal proceedings against Ahmed.  Ahmed asserts that these removal charges were the direct result of his registration in NSEERS.

The amended removal charges filed against Ahmed alleged that he was removable, pursuant to 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States for a time longer

---

[1]  NSEERS is a program that tracks foreign nationals from various countries, including Pakistan, who reside in the United States, pursuant to the direction of 8 U.S.C. §§ 1303, 1305.

than permitted.[2]  On December 12, 2003, Ahmed appeared with counsel before the immigration judge, admitted to DHS's factual allegations, and conceded removability.  He also requested a continuance in order to permit adjudication of his pending labor certification.  In the course of this hearing, the immigration judge denied Ahmed's request for a continuance for lack of good cause, after noting that Ahmed lacked an approved labor certification, a valid visa, or even a pending visa application with DHS.  The same day, the immigration judge ordered Ahmed's removal.

Ahmed appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"), arguing, inter alia, that the immigration judge's decision to deny Ahmed's request for a continuance, in combination with the required NSEERS registration process, violated Ahmed's constitutional rights in various ways and also violated Ahmed's rights protected by 8 U.S.C. § 1255(i).  On December 22, 2004, the BIA affirmed the immigration judge's decision.  Citing its own precedent, the BIA noted that "there is no certainty that [Ahmed] would receive certification" and observed that the decision to grant or deny continuances rests within the "sound discretion" of an immigration judge.  Therefore, the BIA concluded that the immigration judge was

---

[2]  DHS originally charged Ahmed with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted, but subsequently amended the charge of removability and some of the factual allegations.

justified in refusing to grant a continuance "because an Immigration Judge may neither terminate nor indefinitely adjourn the proceedings in order to delay an alien's deportation."  Ahmed filed his petition for review with this court on January 14, 2005.

## II.  DISCUSSION

The issues raised by Ahmed before this court all relate to the immigration judge's refusal to grant a continuance pending the adjudication of his labor certification.  First, citing the recent decision of the Seventh Circuit in <u>Subhan v. Ashcroft</u>, 383 F.3d 591 (7th Cir. 2004), Ahmed argues that the immigration judge's refusal to grant a continuance violated relief rights established by 8 U.S.C. § 1255(i).  Second, Ahmed argues that the immigration judge's refusal to grant a continuance, in combination with the government's registration requirements in the NSEERS program and the immigration judge's order of removal, violated his equal protection and due process rights protected by the Fifth Amendment.  Ahmed concludes that this court should grant his petition for review and return his case to the relevant immigration officials for further proceedings after the adjudication of his pending labor certification.

In response, the government briefly questions our jurisdiction to review Ahmed's statutory arguments and argues that both the statutory and the constitutional arguments are

4

groundless.  On the merits, the government argues that the immigration judge's decision was correct: the slim prospect of relief from removal based on the mere possibility that Ahmed might, at some later date, be granted a labor certification that would, in turn, only enable an employment-based visa <u>petition</u> is too speculative to establish the requisite "good cause" for the granting of a continuance.  More specifically, the government argues that <u>Subhan</u>'s reasoning and conclusion should be rejected and asserts that Ahmed has wholly failed to state a cognizable constitutional violation.

We will address the government's jurisdictional point first, the issues raised by Ahmed's statutory arguments second, and the issues raised by Ahmed's constitutional arguments last.

## A.    Jurisdiction

In its brief before this court, the government suggests that an appellate court's jurisdiction to review an immigration judge's discretionary decision to deny an alien's motion for a continuance is an "open question" for this court.  Other circuits, notably the Eighth Circuit in <u>Onyinkwa v. Ashcroft</u>, 376 F.3d 797 (8th Cir. 2004), and the Tenth Circuit in <u>Yerkovich v. Ashcroft</u>, 381 F.3d 990 (10th Cir. 2004), have analyzed this issue and reached a holding contrary to the conclusion we reach today.  As the government correctly acknowledged in its briefs, however, this court recently noted its disagreement with these decisions

from the Eighth and Tenth Circuits in Zhao v. Gonzales, 404 F.3d 295 (5th Cir. 2005). And as the government correctly conceded at oral argument, Zhao's jurisdictional reasoning has been reaffirmed by this court. See Manzano-Garcia v. Gonzales, 413 F.3d 462, 467 (5th Cir. 2005) (per curiam) (quoting Zhao).

This jurisdictional point revolves around the language of § 1252(a)(2)(B)(ii). As we noted in Zhao, "[o]ne might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision." 404 F.3d at 303. Such a reading is mistaken, however, "because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review" the discretionary authority that is "specified in the statute." Id. As we have repeatedly noted, we observe again that the language of § 1252(a)(2)(B)(ii) is thoroughly "pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised under this statute,' but specifically to 'authority for which is specified under this subchapter to be in the discretion of the Attorney General.'" Id. (quoting § 1252(a)(2)(B)(ii)) (emphasis in Zhao); see also Manzano-Garcia, 413 F.3d at 467 (quoting same).

This court concluded in Zhao that it had authority to review the BIA's discretionary denial of an alien's motion for reconsideration, despite an awareness of "caselaw from other circuits to the contrary," specifically Onyinkwa and Yerkovich. 404 F.3d at 303. In Onyinkwa, the Eighth Circuit held that it

6

lacked jurisdiction to review an immigration judge's denial of a continuance, stating that because the "power to grant continuances is within the discretion of immigration judges . . . courts generally have no jurisdiction to review the exercise of that discretion."  376 F.3d at 799.  We rejected Onyinkwa's reasoning in Zhao because we refused to endorse Onyinkwa's interpretation of § 1252(a)(2)(B)(ii) "whereby any statutorily authorized regulation conferring discretion necessarily forecloses judicial review."  404 F.3d at 303 n.6.  We held that such a reading was both "contrary to Congress's language and has clear policy consequences."  Id.  In Yerkovich, the Tenth Circuit held that it lacked jurisdiction to review an immigration judge's denial of a continuance, citing, inter alia, the Eighth Circuit's decision in Onyinkwa.  381 F.3d at 994.  Again, we rejected this reasoning in Zhao, pointing out that Yerkovich's holding depended on a misstatement of the statutory text of § 1252(a)(2)(B)(ii) itself.  404 F.3d at 303 n.6.  More specifically, we pointed out that Yerkovich omitted the phrase "the authority for which is specified" in its discussion of § 1252(a)(2)(B)(ii).  Id.  We concluded in Zhao that this misstatement caused the Tenth Circuit to "analyze statutory language that Congress did not adopt," a mistake we declined and continue to decline to follow.  Id.

Even if a panel of this court had the authority to revisit our holdings in Manzano-Garcia and Zhao and our interpretation of § 1252(a)(2)(B)(ii), Onyinkwa, and Yerkovich, which it does not,

7

the government has provided us with no new reasons to do so. Therefore, we apply our previous reasoning to the matter at hand and conclude that we have jurisdiction to review the immigration judge's decision to deny Ahmed's motion for a continuance. Cf. Zafar v. United States Attorney General, 426 F.3d 1330, 1334 (11th Cir. 2005) (holding that § 1252(a)(2)(B)(ii) "precludes . . . review of discretionary decisions . . . in only the specific circumstances" specified in the statute itself); Medina-Morales v. Ashcroft, 371 F.3d 520, 528 (9th Cir. 2004) (stating that § 1252(a)(2)(B)(ii) "'refers not to discretionary decisions,' . . . but to acts the authority for which is specified under the INA to be discretionary") (quoting Spencer Enters., Inc. v. United States, 345 F.3d 683, 689 (9th Cir. 2003)).

When, as here, the BIA affirms the immigration judge and relies on the reasons set forth in the immigration judge's decision, this court reviews the decision of the immigration judge as well as the decision of the BIA. Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003).

B.    Ahmed's Statutory Claims

We now turn to Ahmed's statutory claims. Under the provisions of 8 U.S.C. § 1255(i), certain aliens such as Ahmed who were physically but unlawfully present in the United States were given the opportunity to apply for an "adjustment of status

8

. . . to that of an alien lawfully admitted for permanent residence."  Ahmed argues, citing the Seventh Circuit's recent decision in Subhan, that the immigration judge's refusal to continue his removal proceedings violated § 1255(i) because the immigration judge failed to give a reason consistent with § 1255(i) for his refusal.

In Subhan, the Seventh Circuit granted an alien's petition for review taken from decisions very similar to the decisions we review in this matter.  The immigration judge in Subhan granted two requests by an alien petitioner for a continuance pending the adjudication of a timely filed labor certification but denied a third request, stating that although the petitioner might "'be able to eventually acquire lawful permanent resident status by virtue of employment,' not having done so as yet he was 'not eligible for this form of relief at this time.'"  Subhan, 383 F.3d at 593.  The Seventh Circuit held that the immigration judge's reason for denying the continuance was no reason at all, "but merely a statement of the obvious: that the labor departments hadn't yet acted."  Id.  Therefore, the Seventh Circuit granted the alien's petition for review, concluding "that the immigration judge, seconded by the Board of Immigration Appeals . . . violated [8 U.S.C. §] 1255(i) when he denied Subhan a continuance without giving a reason consistent with the statute (indeed without giving any reason)."  Id. at 595.

9

The Eleventh Circuit has also considered this issue and reached the opposite conclusion. In Zafar, decided over a year after Subhan, the Eleventh Circuit considered a petition for review from aliens who claimed that their immigration judges had abused their discretion by refusing to continue the alien petitioners' removal proceedings pending the resolution of labor certifications. 426 F.3d at 1332-33. Like Ahmed, the Zafar petitioners argued that the immigration judges' orders of removal and refusals to continue the proceedings violated their constitutional equal protection and due process rights as well as rights created by § 1255(i). Id. Because the alien petitioners in Zafar offered only "the 'speculative' possibility that at some point in the future they may receive . . . [a] labor certification," the Eleventh Circuit held that they had "failed to demonstrate that they had a visa petition 'immediately available' to them . . . ." Id. at 1336. Therefore, at the time the Zafar immigration judges denied the alien petitioners' "motions to continue their removal proceedings, it [was] clear that the petitioners were ineligible for adjustments to permanent resident status under [8 U.S.C.] § 1255(i) . . . ." Id. The Eleventh Circuit concluded that the immigration judges could not have abused their discretion by refusing to continue the petitioners' proceedings for relief from removal because the

10

petitioners were ineligible for the adjustment relief requested.
Id.

But for § 1255(i), Ahmed, like the Zafar petitioners, would have no grounds for an adjustment of status, because 8 U.S.C. § 1255(c) specifically bars "an alien crewman" who overstays his visa from receiving an adjustment of status. Section 1255(i) creates a specific exception from § 1255(c) by stating that

> [n]otwithstanding the provisions of [§ 1255(c)], an alien [such as Ahmed] . . . . [with] a labor certification . . . that was filed pursuant to the regulations of the Secretary of Labor . . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(i)(1). Section 1255(i) does not, however, create an automatic or a mandatory exception to § 1255(c). To receive such an adjustment of status, a removable alien's § 1255(i) application must be accompanied by an available immigrant visa, and the entire application for adjustment of status must meet with the discretionary approval of the Attorney General or his designee. See 8 U.S.C. § 1255(i)(2) (stating that "[u]pon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed") (emphasis added). Ahmed concedes that an immigrant

11

visa was not otherwise available to him.  Therefore, at the time of his removal hearing, Ahmed had begun only the first preliminary step toward completing a § 1255(i) application for removal relief, and nothing in § 1255(i) vested any right to relief from removal when he filed his labor certification.[3]

We agree with our sister circuit that in some situations, "the wheels of bureaucracy grind slow," Subhan, 383 F.3d at 593, but the most important wheels in this matter have already turned. The relevant immigration authorities have decided both that Ahmed is removable and that he should be removed.  Ahmed's pending labor certification would not have made him any less removable even if it had been processed at the time of his hearing before the immigration judge.  In order to receive relief from removal on the undisputed facts, Ahmed needed to receive an adjustment of status, and the receipt of his pending labor certification was only the first step in this long and discretionary process.  See 8 U.S.C. § 1255(i)(2), discussed supra.  Various immigration officials could have properly exercised their discretion, denied Ahmed's application for an adjustment of status, and ensured his removal at any of these subsequent discretionary points.  In this

---

[3]  In other words, had Ahmed received his labor certification and completed the very first step in this process, he would still have needed an employer, presumably American Rags, to file an employment-based visa petition on his behalf with DHS, and he would have needed that visa petition to have been approved.  See 8 U.S.C. § 1255(i)(2)(A), discussed supra.  Only then would he have been eligible for the discretionary removal relief contemplated by § 1255(i).

12

matter, the immigration judge simply exercised his discretion at the first stage of this lengthy and discretionary process when he refused to grant Ahmed a continuance for lack of good cause. The immigration judge's reasons for this refusal were correct; Ahmed lacked good cause for a continuance because he was ineligible for removal relief under the relevant statutes. Therefore, we decline to hold that the decision to end this lengthy and discretionary adjustment of status process was itself an abuse of discretion. Cf. Zafar, 426 F.3d at 1336 (citing, inter alia, Onyeme v. INS, 146 F.3d 227, 234 (4th Cir. 1998) (finding no abuse of discretion in BIA's affirmance of immigration judge's refusal to continue proceedings when an alien petitioner failed to meet all statutory requirements for adjustment of status), and Oluyemi v. INS, 902 F.2d 1032, 1034 (1st Cir. 1990) (same)).

## C.    Ahmed's Constitutional Claims

We now address Ahmed's claims that his equal protection and due process rights have been violated.

Ahmed argues that by registering for NSEERS, he alerted the government to the fact that he had overstayed his original crewman's visa. Therefore, he suggests that his registration for NSEERS was the ultimate cause of both DHS's decision to initiate removal proceedings against him and the immigration judge's decision to order his removal. Because other aliens of other nationalities were not necessarily required to register for

13

NSEERS, Ahmed argues that his equal protection rights were violated.

This court has long held that "[a]liens enjoy some constitutional protections, regardless of their status," but it has also long held that "this protection is limited by Congress's broad powers to control immigration." Rodriguez-Silva v. INS, 242 F.3d 243, 247, 246 (5th Cir. 2001). More specifically, this court has held "that the equal protection principles that are implicit in the . . . Fifth Amendment do not in any way restrict Congress's power to use nationality or place of origin as criteria for the naturalization of aliens or for their admission to or exclusion or removal from the United States." Id. at 248. In their efforts to carry out Congress's criteria for naturalization, admission, and removal, the Attorney General and his designees have broad discretion to initiate removal proceedings against aliens like Ahmed who violate immigration laws. See, e.g., Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489-91 (1999) (stating that the "particularly demanding" standard applied to accusations of breached prosecutorial discretion is "greatly magnified in the deportation context"); Cardoso v. Reno, 216 F.3d 512, 517 (5th Cir. 2000) (discussing the clear congressional intent to protect the Attorney General's long-established discretion to decide whether and when to prosecute, adjudicate, and execute removal proceedings and removal orders).

At most, Ahmed's allegations describe only one influence upon DHS's exercise of its discretion. The immigration judge refused to grant Ahmed a continuance because Ahmed failed to provide good cause for a continuance, and the immigration judge ruled that Ahmed was removable because Ahmed violated 8 U.S.C. § 1227(a)(1)(B). Ahmed's registration in NSEERS had nothing to do with either decision of the immigration judge. In keeping with Congress's clear intent and the well-established precedent of this court, we hold that the alleged impact of NSEERS on DHS's decision to initiate removal proceedings against Ahmed does not constitute a violation of Ahmed's equal protection rights. Cf. Zafar, 426 F.3d at 1336 (finding that a removal proceeding initiated after an alien's registration in NSEERS was a valid exercise of discretion and not an infringement of equal protection rights).

Ahmed's due process arguments are similarly unpersuasive. Ahmed argues that the district court's refusal to continue the removal proceedings, a refusal that prevented him from pursuing his application for an adjustment of status, violated his substantive due process rights. In so doing, Ahmed has incorrectly "presuppose[d] . . . [that he has] a constitutionally protected right to actual discretionary relief from removal or to be eligible for such discretionary relief . . . ." Manzano-Garcia, 413 F.3d at 471. This circuit has repeatedly held that discretionary relief from removal, including an application for

15

an adjustment of status, is not a liberty or property right that requires due process protection. See, e.g., Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004) (stating, in a removal context, that due process claims revolving around an alleged failure to receive discretionary relief are not based upon a constitutionally protected liberty interest); Mireles-Valdez v. Ashcroft, 349 F.3d 213, 219 (5th Cir. 2003) (holding that eligibility for discretionary relief from a removal order is not a liberty or property interest warranting due process protection). In keeping with the well-established precedent of this court, we hold that Ahmed has failed to raise a violation of his due process rights.

## III. CONCLUSION

For the reasons given above, we DENY Ahmed's petition for review.