

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2006

# Khan v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4336

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Khan v. Atty Gen USA" (2006). *2006 Decisions.* Paper 995.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/995

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4336

———

MOHAMMED NASIR KHAN,
                                    Petitioner

v.

*ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

*Pursuant to F.R.A.P. 43(c)

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A79 708 104)
Immigration Judge: Daniel A. Meisner

———

Argued December 15, 2005

Before: SLOVITER, SMITH, and VAN ANTWERPEN,
Circuit Judges

(Filed May 22, 2006)

Jeffrey C. Bloom
Flushing, NY 11354

Francois-Ihor Mazur   (Argued)
Philadelphia, PA l9l03

        Attorneys for Petitioner

Michael P. Lindemann
Douglas E. Ginsburg   (Argued)
Lyle D. Jentzer
United States Department of Justice
Office of  Immigration Litigation
Washington, DC 20044

        Attorneys for Respondent


                OPINION OF THE COURT
                     ————


SLOVITER, Circuit Judge.

        Petitioner Mohammed Nasir Khan seeks review of the
decision of the Board of Immigration Appeals ("BIA") affirming
the decision of the Immigration Judge ("IJ") who denied Khan's
request for a continuance of his removal proceeding.  We must
decide at the outset whether we have jurisdiction.

                        I.

                    Background

        Khan is a forty-seven-year-old native and citizen of
Bangladesh.  He entered the United States as a non-immigrant
business visitor on September 20, 1996, with permission to
remain for a period not to exceed one month.  On March 25,
2003, Khan voluntarily reported to the offices of the Department
of Homeland Security ("DHS") to register in compliance with
DHS's "special registration" program.[1]  DHS placed Khan into

————————————

        [1] The special registration program, which DHS enlarged
post-9/11, requires non-citizens from specified countries   to
register with the National Security Entry-Exit Registration System.
See Ali v. Gonzales, 440 F.3d 678, 679 (5th Cir. 2006) (per
curiam); Murtuza v. Gonzales, 427 F.3d 508, 509 (7th Cir. 2005);

                        2

removal proceedings that same day by serving him with a Notice to Appear in which it charged him with removability under INA § 237(a)(1)(B) for overstaying his visa.

On October 2, 2003, Khan appeared pro se for a hearing before an IJ who adjourned the proceeding so that Khan could seek counsel. On November 20, 2003, Khan again appeared before the IJ, this time with counsel. Khan conceded his removability as charged and did not apply for asylum or other substantive relief. Instead, he applied for voluntary departure and submitted a written motion seeking a continuance of the removal proceeding or, in the alternative, a termination of the proceeding on the ground that his wife (also an alien from Bangladesh) had a pending application for an Alien Employment Certification ("Labor Certification") with the United States Department of Labor ("DOL").[2]

---

Registration and Monitoring of Certain Nonimmigrants, 67 Fed. Reg. 52,584 (Aug. 12, 2002); 8 C.F.R. § 264.1(f) (2002).

[2]Employment-based permanent residency (a "green card") is available to aliens through a three-step process. First, the alien's prospective employer must file an application for Labor Certification (Form ETA-750) with the DOL, which refers the petition to the appropriate state-level authority, such as the Pennsylvania Department of Labor. If the application satisfies certain requirements (e.g., sufficient United States workers are unwilling or unable to perform the job in question), the state labor office and, thereafter, the DOL will "certify" the labor request. Second, the alien's prospective employer must file with DHS the approved Labor Certification along with a Visa Petition for Prospective Immigrant Employee (Form I-140):

> A Visa Petition constitutes a request to [DHS] that the alien named in the Labor Certification be classified as eligible to apply for designation within a specified visa preference employment category. If [DHS] approves the Visa Petition and classifies the certified alien as so eligible, the alien is assigned an immigrant visa number by the Department of State.

3

Khan and his wife, Rehana Begum, were married in Bangladesh in 1982; they have a United States citizen minor child. On April 30, 2001, a prospective employer in Pennsylvania filed a Labor Certification for permission to employ Begum as a "Household Cook" at a private residence. Khan's wife timely applied for the Labor Certification under INA § 245(i), 8 U.S.C. § 1255(i) ("LIFE Act"), which had a sunset date of April 30, 2001.[3] As relevant to the instant case, the LIFE Act provides that a legal permanent resident alien's spouse and minor children are eligible, by virtue of their relation to the alien, to apply for adjustment of status if otherwise qualified. See 8 U.S.C. § 1255(i)(1)(B); 8 U.S.C. § 1153(d).

At the November 20, 2003 hearing, Khan's counsel represented to the IJ that it "usually takes about 45 days to get a response from the regional" on an application for a Labor Certification. App. at 49. The IJ denied the requested continuance, reasoning that Begum's application for a Labor Certification was merely pending, no visa petition had yet been filed, and therefore Khan was not prima facie eligible to adjust his status. The IJ also denied Khan's alternative request to terminate the removal proceedings altogether, rejecting Khan's suggestion that termination was warranted because DHS had

_____

United States v. Ryan-Webster, 353 F.3d 353, 356 (4th Cir. 2003) (citing 8 U.S.C. § 1153(b)). Third, and finally, after the alien receives a visa number under Form I-140, and if the alien presently resides in the United States (as does Khan's wife), then the alien must file with DHS an Application to Adjust Status (Form I-485). DHS then considers Forms I-140 and I-485 to determine whether to adjust the alien's status to lawful permanent resident. Such adjustment permits the alien to live and work in the United States. If the alien is granted lawful permanent resident status, DHS will issue a "green card" to the alien.

[3]The LIFE Act enabled certain aliens unlawfully present in the United States to pay an application fee and remain here while seeking to adjust their status based on employment. 8 U.S.C. § 1255(i)(1).

4

failed to follow its own regulations in requiring Khan to register under the special registration program. The IJ noted that Khan, through counsel, had conceded his removability as charged and declined to rule on Khan's due process challenge to the registration program. The IJ ordered Khan's removal to Bangladesh but granted him a sixty-day window to depart voluntarily.

Khan timely appealed to the BIA, raising two arguments: (1) the special registration procedure "is repugnant to the US constitution;" and (2) the IJ erred in refusing to grant a continuance on the ground that Begum's application for a Labor Certification was pending. App. at 5. Khan noted that Begum's Labor Certification already had been approved at the state level and was pending only before the federal Regional Office of the DOL. Khan argued that he should not be faulted for the government's delay in processing Labor Certifications. On October 27, 2004, the BIA summarily affirmed the IJ's order without opinion and permitted Khan thirty days to depart voluntarily.

Khan timely filed this petition for review. The Government filed a motion to dismiss on the ground that this court lacks jurisdiction and, alternatively, for summary affirmance.

## II.

As we noted above, this case presents at the threshold the question whether this court has jurisdiction over the petition for review. The BIA issued a final order summarily affirming the IJ's removal order, which the IJ entered after denying Khan's motion for a continuance. Thus, the BIA order falls within our jurisdiction to review a "final order of removal," 8 U.S.C. § 1252(a)(1).

The Government argues we lack jurisdiction to review the IJ's denial of Khan's request for a continuance because such denial constitutes a "discretionary determination." Motion to Dismiss at 4. The Government relies upon the language of INA

§ 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii), which provides in pertinent part:

> Notwithstanding any other provision of law . . . , no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . , other than the granting of [asylum] relief under section 1158(a) of this title.

Id. (emphasis added).

As the Government suggests, the question whether we have jurisdiction in the present case turns on whether the IJ's authority to grant Khan a continuance of the removal proceeding is "specified under this subchapter," and therefore precluded from review. Id. We have previously explained that, "[t]he language 'this subchapter' in the foregoing provision refers to Subchapter II in Chapter 12 of Title 8 of the United States Code," which consists of 8 U.S.C. §§ 1151-1378 ("Subchapter"). Urena-Tavarez v. Ashcroft 367 F.3d 154, 158 (3d Cir. 2004).

There is no statutory provision within the Subchapter that explicitly confers discretion on an IJ to grant a continuance. The only provision in the Subchapter which might be construed to confer such discretion is 8 U.S.C. § 1229a(a), which grants authority to "[a]n immigration judge [to] conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Arguably, a tribunal authorized to hear a matter has inherent authority to continue the hearing to another time. In any event, a federal regulation explicitly confers discretion upon the IJ to grant a continuance: "The Immigration Judge may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29 (2006).

Significant for present purposes is the issue whether the IJ's decision on such a motion can be reviewed by this court. The Courts of Appeals are divided on the question whether an express grant of discretionary authority in a federal regulation implemented pursuant to the Subchapter amounts to authority

6

"specified under this subchapter."

We look first to whether this court has spoken on this issue. In <u>Bakhtriger v. Elwood</u>, 360 F.3d 414 (3d Cir. 2004), we engaged in an extensive examination of the authority of the Courts of Appeals to review discretionary decisions in asylum cases prior to enactment of the REAL ID Act of 2005. We examined the "kinds of challenges [that] are cognizable in criminal alien removal habeas petitions," <u>id.</u> at 420, and concluded that 28 U.S.C. § 2241 habeas review does not incorporate an examination of the exercise of discretion but "must be confined to questions of constitutional and statutory law." <u>Id.</u> at 424. That decision is inapplicable here because the present case does not involve a "criminal alien" and therefore our review is not restricted to "constitutional challenges or errors of law." <u>Id.</u> at 425. In <u>Bakhtriger</u>, we did not have occasion to consider the applicability of the "specified under this subchapter" language of 8 U.S.C. § 1252(a)(2)(B)(ii).

Thereafter, we did consider this language in <u>Soltane v. U.S. Dep't of Justice</u>, 381 F.3d 143 (3d Cir. 2004). In that case the issue before us was whether jurisdiction to review the IJ's denial of a preference visa to certain special immigrants under 8 U.S.C. § 1153(b)(4) was barred by § 1252(a)(2)(B)(ii). <u>Id.</u> at 146. Because the language of § 1153(b)(4) stated that a "visa 'shall' issue if [certain] requirements are met," we could "not read § 1153(b)(4) as having 'specified' that the granting of the visas in question 'be in the discretion of the Attorney General.'" <u>Id.</u> at 147.

We also considered the language of § 1252(a)(2)(B)(ii) in <u>Urena-Tavarez</u>, 367 F.3d 154. In <u>Urena-Tavarez</u>, we held that 8 U.S.C. § 1186a(c)(4), which governs the grant of conditional permanent resident status based on marriage to a United States citizen, by its terms explicitly assigns discretion to the Attorney General and therefore § 1252(a)(2)(B)(ii) precluded review by this court of the denial of a waiver under § 1186a(c)(4). <u>Id.</u> at 161.

The only other precedential opinion in which we have

7

considered § 1252(a)(2)(B)(ii) is our recent decision in Jilin Pharmaceutical USA, Inc. v. Chertoff, No. 05-2788, __ F.3d __ (3d Cir. May 10, 2006). In Jilin, we held that 8 U.S.C. § 1155 explicitly provides the Attorney General with discretion to revoke the prior approval of a visa petition and therefore such revocation is shielded from court review pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). Jilin, Slip Op. at 8-21, 24.

In none of the cases referred to above, Soltane, Urena-Tavarez , and Jilin, did we address the issue before this court in the instant case–namely, whether § 1252(a)(2)(B)(ii) bars jurisdiction when there is no statute expressly granting discretion to the Attorney General but discretionary authority is extant under a federal regulation. Accordingly, the issue before us is one of first impression for this court.

The Eighth and Tenth Circuit Courts of Appeals have interpreted § 1252(a)(2)(B)(ii) to mean that a Court of Appeals has no jurisdiction to review the denial of a petitioner's motion for a continuance of a removal proceeding. Yerkovich v. Ashcroft, 381 F.3d 990, 995 (10th Cir. 2004); Onyinkwa v. Ashcroft, 376 F.3d 797 (8th Cir. 2004). In Yerkovich, the court felt itself bound by its earlier decision in Van Dinh v. Reno, 197 F.3d 427, 433 (10th Cir. 1999), which had broadly construed the preclusive effect of § 1252(a)(2)(B)(ii). See 990 F.3d at 994. Both Yerkovich and Onyinkwa based their decisions that review of the denial of a motion for a continuance is barred on the ground that 8 C.F.R. § 1003.29, which implements an IJ's statutory authority under § 1229a(a)(1) to "conduct proceedings," confers discretion upon the IJ to grant a continuance. Therefore, they reasoned, "'the plain meaning of § 1252(a)(2)(B)'s text' bar[ring] courts from reviewing relief 'specified under this subchapter'" encompasses orders of the IJ denying continuances. Yerkovich, 381 F.3d at 994 (quoting Samirah v. O'Connell, 335 F.3d 545, 549 (7th Cir. 2003)); accord Onyinkwa, 376 F.3d at 799.[4]

---

[4]In Subhan v. Ashcroft, 383 F.3d 591 (7th Cir. 2004), the Seventh Circuit addressed this jurisdictional issue, but only in

8

Courts that have held to the contrary have ruled that discretionary authority to grant a continuance cannot be considered "specified under this subchapter" where the language that expressly provides for such authority appears only in a regulation. See Ahmed v. Gonzales, No. 05-60032, 2006 WL 1064196, at *3 (5th Cir. Apr. 24, 2006); Sanusi v. Gonzales, No. 01-4047-ag, 2006 U.S. App. LEXIS 9640, at *10-*14 (2d Cir. Apr. 18, 2006) (per curiam); Zafar v. U.S. Att'y Gen., 426 F.3d 1330, 1335 (11th Cir. 2005). As the court stated in Zafar, "Because denials of motions to continue are not statutorily-proscribed discretionary acts 'specified under this sub[chapter]' to the Attorney General, as enumerated in § 1252(a)(2)(B)(ii), we have jurisdiction to review them." 426 F.3d at 1335; accord Ahmed, 2006 WL 1064196, at *3; Sanusi, 2006 U.S. App. LEXIS 9640, at *10-*14; see also Abu-Khaliel v. Gonzales, 436 F.3d 627 (6th Cir. 2006) (agreeing with the result, but not the reasoning, of Zafar).

The Courts of Appeals for the Fifth and Ninth Circuits have adopted similar reasoning in concluding that the language of § 1252(a)(2)(B)(ii) does not bar review of the denial of a motion to reopen removal proceedings, a proceeding comparable to a motion to continue in its invocation of the IJ's discretion. In Zhao v. Gonzales, 404 F.3d 295 (5th Cir. 2005), the court stated,

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority *specified in the statute*. The statutory language is uncharacteristically pellucid on this score; it does not allude generally to "discretionary authority" or to "discretionary authority

---

dicta. The Subhan court ""[s]uppos[ed,] . . . without having to decide, that section 1252(a)(2)(B)(ii) *generally* bars judicial review of a continuance granted by an immigration judge in a removal proceeding." Id. at 595.

9

exercised *under this statute*," but specifically to "authority for which is *specified under this subchapter* to be in the discretion of the Attorney General."

Id. at 303 (quoting § 1252(a)(2)(B)(ii)); see also Medina-Morales v. Ashcroft, 371 F.3d 520, 528 (9th Cir. 2004) ("Because 8 U.S.C. § 1229a(c) neither grants nor limits the Attorney General's discretion to deny motions to reopen, [it] can perhaps be said to have left such authority to the Attorney General by default. But default authority does not constitute the *specification* required by § 1252(a)(2)(B)(ii).").

In its recent opinion in Sanusi, 2006 U.S. App. LEXIS 9640, the Second Circuit reviewed the conflicting opinions and weighed in on the side of those courts that hold the Courts of Appeals have jurisdiction to review for abuse of discretion a claim that an IJ wrongly denied a motion for a continuance in an immigration proceeding. Id. at *11-*14. The court surveyed the statutory landscape and noted its agreement with those circuits that have held "that the decision by an IJ or the BIA to grant or to deny a continuance in an immigration proceeding is *not* a decision 'specified under [the relevant] subchapter to be in the discretion of the Attorney General.'" Id. at *13 (alteration in original) (citations omitted); accord Ahmed, 2006 WL 1064196, at *3. The court then stated:

> Although the presiding officer at a hearing traditionally has discretion to grant or to deny continuances requested by the parties appearing before him, we cannot conclude that the decision to grant or to deny a continuance in immigration proceedings is "specified under [the relevant] subchapter to be in the discretion of the Attorney General." Indeed, continuances are not even mentioned in the subchapter. We therefore hold that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive us of jurisdiction to review decisions by IJs to grant or to deny continuances, which accords with our general presumption in favor of judicial review. *See INS v. St. Cyr*, 533 U.S. 289, 298, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (stating that despite specific jurisdiction-

10

denying provisions, in immigration cases there still exists
a "strong presumption in favor of judicial review of
administrative action").

Sanusi, 2006 U.S. App. LEXIS 9640, at *14 (alteration in
original) (footnotes omitted).

In our view, the Second, Fifth, Ninth and Eleventh Circuit
Courts of Appeals have adopted the correct reading of §
1252(a)(2)(B)(ii). As we have previously observed, "[t]he key to
§ 125[2](a)(2)(B)(ii) lies in its requirement that the discretion
giving rise to the jurisdictional bar must be 'specified' by statute.
In other words, 'the language of the statute in question must
provide the discretionary authority' before the bar can have any
effect." Soltane, 381 F.3d at 146 (quoting Spencer Enterprises,
Inc. v. United States, 345 F.3d 683, 689 (9th Cir. 2003)).
Indeed, "to specify" means "[t]o state explicitly or in detail,"
American Heritage College Dictionary 1307 (3d ed. 1993), and §
1229a(a) states nothing at all about an IJ's power to grant or
deny a continuance.

In Abu-Khaliel, the Sixth Circuit agreed with the
Eleventh Circuit that "we have jurisdiction to review the IJ's
denial of a continuance" but reached this conclusion through
different reasoning. Abu-Khaliel, 436 F.3d at 633. In contrast
to the Eleventh Circuit, the Sixth Circuit interpreted the power to
"conduct proceedings" conferred by § 1229a(a)(1) to include the
power to deny a continuance. Id. at 634 (noting that "a
necessary component of" the power to conduct proceedings is
"the ability to decide . . . when it is appropriate to delay a
proceeding until a later time"). Therefore, unlike the Eleventh
Circuit, the Sixth Circuit concluded that the power to deny
continuances is indeed "specified under this subchapter" within
the meaning of § 1252(a)(2)(B)(ii). Id. However, the Sixth
Circuit agreed with the ultimate holding of the Eleventh Circuit
on the ground that § 1252(a)(2)(B)(ii) "only stripped this court
of jurisdiction for decisions within subchapter II it left to the
discretion of the Attorney General." Id. (emphasis added). The
Abu Khaliel court held that because § 1229a(a)(1) leaves
discretion to the IJ rather than the Attorney General, "we have

11

jurisdiction to review the IJ's decision to deny a continuance." Id.[5]

Although we agree with the Sixth Circuit that we have jurisdiction to review an IJ's denial of a continuance, we do not adopt its conclusion that an IJ's discretionary power to grant or deny a continuance is "specified" in § 1229a(a)(1). Because the IJ's authority to rule on a continuance motion is not "specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General," we hold that § 1252(a)(2)(B)(ii) does not deprive this court of jurisdiction.

## III.

## Merits

Because the BIA summarily affirmed without opinion, we review the IJ's decision. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29 (2006). We review the denial of a continuance for abuse of discretion. Ponce-Leiva v. Ashcroft, 331 F.3d 369, 377 (3d Cir. 2003). The IJ's decision should be reversed only if it is arbitrary, irrational or contrary to law. Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994) (citations omitted). In Ponce-Leiva, we explained that "'[t]he question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each

---

[5]Under Abu-Khaliel, if § 1229a(a)(1) had granted the power to "conduct proceedings" to the Attorney General rather than to IJs, the Attorney General could then delegate that power to IJs and thereby strip federal courts of jurisdiction to review the denial of a continuance under § 1252(a)(2)(B)(ii). See Abu-Khaliel, 436 F.3d at 634 (noting that "we do not believe that an IJ and the Attorney General are the same when the IJ is carrying out duties conferred by statute as opposed to when the IJ is performing duties delegated by the Attorney General").

12

case.'" Ponce-Leiva, 331 F.3d at 377 (quoting Baires v. INS, 856 F.2d 89, 91 (9th Cir. 1988)).

Khan argues that the denial of his continuance request amounted to an abuse of discretion and deprived him of due process of law because it effectively denied him the benefit of seeking to adjust his status under the LIFE Act. Khan contends that a continuance was warranted because he had done everything in his power to comply with the law and should not have been faulted for the government's delay in processing his wife's Labor Certification.

Khan cites Subhan v. Ashcroft, 383 F.3d 591 (7th Cir. 2004), for the proposition that the IJ abused his discretion in refusing to grant a continuance. The court in Subhan assumed, without deciding, that § 1252(a)(2)(B)(ii) "*generally*" bars jurisdiction over the denial of a motion for a continuance. Id. at 595.[6] The court held, however, that the jurisdictional bar cannot extend to a case in which an alien seeks a continuance pending a Labor Certification if the IJ denies the continuance without a reasoned explanation for the denial. Id. In Subhan, the IJ had denied the petitioner's third request for a continuance by explaining that although the petitioner eventually might have acquired lawful permanent residence by virtue of his labor petition, his failure to have done so rendered him "not eligible for this form of relief at this time." Id. at 593. The Seventh Circuit rejected this explanation, concluding that "[t]his was not a reason for denying the motion for a [] continuance, but merely a statement of the obvious: that the labor departments hadn't yet acted." Id. The Subhan court concluded that the IJ's denial of the continuance without stating a reasoned basis for the decision constituted an abuse of discretion because such denial nullified the terms of § 1255(i), which authorizes the Attorney General to grant an alien present in the United States an adjustment of status if s/he "is eligible to receive an immigrant visa and is admissible" and "an immigrant visa is immediately available to the alien at the time the application is filed." 8 U.S.C. §

_____

[6]See supra note 4.

13

1255(i)(2)(A)-(B).

In the instant case, as in Subhan, the IJ's explanation for refusing Khan a continuance amounted to a determination that Khan was "not eligible for this form of relief at this time." Subhan, 383 F.3d at 593. The IJ found that "[t]here is no underlying visa petition (I-140) filed [in Khan's name] because [his wife's] labor certification is pending." App. at 36. Based on this finding, the IJ ruled "that it would be inappropriate to grant an . . . adjournment of these proceedings" because Khan could not establish prima facie eligibility for adjustment of status. Id.

Where, as here, an alien has failed to submit a visa petition, an IJ's decision to deny the alien's continuance request is squarely within the IJ's broad discretion, at least absent extraordinary circumstances not extant in the present case.[7] See Onyeme v. INS, 146 F.3d 227, 234 (4th Cir. 1998) ("Because he had not established a *prima facie* case for an adjustment of status, the BIA did not abuse its discretion in declining to remand this case for a continuance pending resolution of the third visa petition filed on Onyeme's behalf."). Khan cites no authority for the proposition that government "delay" in processing his wife's Labor Certification constitutes an extraordinary circumstance that would warrant an open-ended

---

[7]In Matter of Garcia, the BIA held that while "an alien does not have an absolute right" to a continuance of removal proceedings, an IJ generally should grant such a continuance where an alien has submitted "a prima facie approvable visa petition." Matter of Garcia, 16 I. & N. Dec. 653, 656-57 (BIA 1978) modified on other grounds by In re Arthur, 20 I & N Dec. 475 (BIA 1992). However, the BIA suggested that, even where an alien has submitted a visa petition, "[i]t clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance . . . upon his determination that the visa petition is frivolous or that the Adjustment Application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition." Id. at 657.

14

continuance of removal proceedings.

It is undisputed that Khan is presently ineligible for an immigrant visa, which is a prerequisite to an adjustment of status under § 1255(i).  Moreover, Khan cannot show that a visa is "immediately available" to him or even that one will be available to him at some estimable time in the future.  Khan has provided no estimate, beyond the 45 days he suggested to the IJ on November 20, 2003, of how long it would take for his wife's Labor Certification to be approved; therefore, any continuance would be indefinite. As the Eleventh Circuit explained on similar facts in Zafar:

> [S]ince all that the petitioners offered the immigration judges was the "speculative" possibility that at some point in the *future* they *may* receive, or in Zafar's case, his father *may* receive, labor certification, petitioners have failed to demonstrate that they had a *visa petition* "immediately available" to them because they could not have filed an "approvable" visa petition without the labor certification in the first place, which is a prerequisite for relief under 8 U.S.C. § 1255(i) and 8 C.F.R. § 245.10(a)(3).  At the time of the immigration judges' denials of the petitioners' motions to continue their removal proceedings, it is clear that the petitioners were ineligible for adjustments to permanent resident status under § 1255(i) and there thus were no visas "immediately available" to them.

Zafar, 426 F.3d at 1336 (citations omitted); accord Ahmed, 2006 WL 1064196, at *5.

It is true, as Khan complains, that DOL's apparent delay in processing his wife's Labor Certification is beyond his control, and that if the DOL had acted more promptly he might be adjusting his status rather than facing removal.  However, on the present facts that delay does not restrict the IJ's scope of discretion to the sole option of granting continuance.  Cf. Ahmed, 2006 WL 1064196, at *5 ("In this matter, the immigration judge simply exercised his discretion at the first

15

stage of this lengthy and discretionary process when he refused to grant Ahmed a continuance for good cause shown."). Khan has conceded that he is removable as charged and makes no claim for asylum, withholding of removal, or relief under the Convention Against Torture. Moreover, he has failed to file a visa petition and is presently ineligible for an adjustment of status. See id. (ruling that an alien in Khan's position "lacked good cause for a continuance because he was ineligible for relief under the relevant statutes").

As with the petitioners in Ahmed and Zafar, Khan has offered only "the 'speculative' possibility that at some point in the *future* . . . his [wife] *may* receive, labor certification." Zafar, 426 F.3d at 1336. Ultimately, the decision to adjust Khan's status lies within the discretion of the Attorney General, and we cannot say that on the present facts the refusal of a continuance was an abuse of discretion. Cf. id. ("Based on this record, there was no abuse of discretion in denying [the] motions to continue [the] removal proceedings."); Ahmed, 2006 WL 1064196, at *5.

In addition to his abuse-of-discretion claims, Khan claims that the rejection of his continuance request worked a denial of his right to due process of law under the Fifth Amendment.[8] To

---

[8]On appeal before the BIA, Khan claimed that the IJ improperly denied him a continuance but did not put this claim in terms of constitutional due process. See App. at 5. Therefore, we consider briefly whether Khan has exhausted his remedies with respect to this claim.

We have jurisdiction over an alien's claim only where the alien has "raise[d] and exhaust[ed] his or her remedies as to [that] claim." Abdulrahaman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003); see Bak v. INS, 682 F.2d 441, 442-43 (3d Cir. 1982) (per curiam) (holding exhaustion requirement is jurisdictional). However, "exhaustion of administrative remedies is not always required when the petitioner advances a due process claim." Sewak v. INS, 900 F.2d 667, 670 (3d Cir. 1990); see Bonhometre v. Gonzales, 414 F.3d 447 n.7 (3d Cir. 2005) (citing Vargas v. INS,

16

831 F.2d 906, 908 (9th Cir. 1987) ("[D]ue process claims generally are exempt from [the exhaustion requirement] because the BIA does not have jurisdiction to adjudicate constitutional issues.")).

In Bonhometre, Petitioner Bonhometre raised before this court a claim of procedural error he had not raised before the BIA. Although he presented his claim "in the language of procedural due process," we instead viewed it as an administrative claim of procedural error that the BIA could have addressed on appeal. Bonhometre, 414 F.3d at 448; see Sewak, 900 F.2d at 670 (noting that where a "due process claim amounts to a procedural error correctable through the administrative process," we consider whether the correctable error was raised below for exhaustion purposes). Because Bonhometre's claim, stripped of its "due process" label, had not been raised before the BIA, we held that we lacked jurisdiction to review the claim. Bonhometre, 414 F.3d at 448; see also Sewak, 900 F.2d at 670-71; Vargas, 831 F.2d at 908.

The present case is similar to Bonhometre in two respects. First, Khan raises a procedural due process claim for the first time in his petition for review. Second, because this claim, stripped of its "due process" label, is a claim of procedural error that could have been addressed by the BIA on appeal, the requirement that Khan exhaust remedies applies. However, unlike in Bonhometre, Khan did raise this claim (without its "due process" label) in his appellate brief before the BIA. App. at 5 (challenging "the IJ's refusal to grant an adjournment"). Therefore, we have jurisdiction over Khan's "due process" claim, but we treat it as a claim of mere "procedural error correctable through the administrative process." Sewak, 900 F.2d at 670; see Bonhometre, 414 F.3d at 447 n.8 (citing Sewak, 900 F.2d at 670); cf. Sewak, 900 F.2d at 670-71 ("Sewak's due process claim amounts to a procedural error correctable through the administrative process. Thus, before we can consider Sewak's petition, we must assure ourselves that he has exhausted his administrative remedies. . . . Sewak raised before the BIA, and the BIA considered, the same issues he raises in his petition for review in this Court. It cannot be denied that Sewak has exhausted his remedy of appeal to the BIA.") (footnote

17

make this claim successfully, Khan "must show that he was prevented from reasonably presenting his case." Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002) (quotation marks and citation omitted). He has failed to make any such showing. Indeed, Khan's due process argument merely recasts his abuse-of-discretion argument in constitutional terms and can be denied for the reasons already stated. Moreover, "[d]ue process challenges to deportation proceedings require an initial showing of substantial prejudice." Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997). Khan cannot show that he has been prejudiced by the IJ's denial of his continuance motion because there is no evidence as to when, if ever, his wife's Labor Certification might be granted. The Government correctly argues that Khan "has no constitutional right to have his proceedings held in abeyance while he attempts, belatedly, to restore his status." Motion to Dismiss at 11.

## IV.

For the foregoing reasons, the Government's motion to dismiss for want of jurisdiction is denied and Khan's petition for review is denied on the merits.

---

omitted).