

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-13-2008

# As v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4131

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"As v. Atty Gen USA" (2008). *2008 Decisions.* Paper 237.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-4131

———————

ZULKARNAINI AS; AMALIA ZULKARNAINI; DION FAUZAN; HOERRY
SATRIO; HADY THOYYIB; FITHRA FAUZANA,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A72-372-248, A97-188-563, A97-188-564, A97-188-565, A97-188-566,
A97-188-567 )
Immigration Judge:  Honorable Miriam K. Mills

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2008

Before: BARRY, SMITH and HARDIMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 13, 2008)
_____

OPINION
_____

PER CURIAM

Zulkairnaini As ("petitioner") and his wife and four children, natives and citizens

of Indonesia, petition for review of the BIA's decision denying them withholding of

removal. For the foregoing reasons, we will deny the petition for review.

Petitioner entered the United States on an F-1 student visa on May 14, 1994. On October 24, 1994, the government approved petitioner's application for a J-1 visa, available to certain foreign students, scholars, and researchers. 8 U.S.C. § 1101(a)(15)(J). Petitioner's wife and children were admitted on November 30, 1994, on J-2 visas. Petitioner filed an affirmative application for asylum on March 18, 2003. The government issued a Notice to Appear on February 5, 2004, charging petitioner as removable under INA § 237(a)(1)(C)(i), for overstaying his J-visa and charging petitioner's family as removable under INA § 237(a)(1)(A) for having been inadmissible at the time of entry. Petitioner and his family sought asylum, withholding of removal and protection under the Convention Against Torture ("CAT") based on petitioner's 2003 asylum application. The Immigration Judge determined that petitioner's asylum application was time-barred because he failed to file within one year of April 1, 1998,[1] and he did not qualify for an exception. The IJ also determined that petitioner had not met his burden of proof for withholding of removal or for CAT relief. The BIA denied petitioners' appeal, and petitioners timely filed a petition for review.

In their petition for review, petitioner and his family challenge the BIA's determination that petitioner had failed to meet his burden of proof on his claim for

---

[1]Under regulations establishing the one-year filing deadline, anyone seeking asylum who had entered the U.S. on or before April 1, 1997, was required to file his or her application by April 1, 1998. See 8 C.F.R. § 1208.4(a)(2)(ii).

2

withholding of removal and raise a number of due process issues. Petitioner asserts that he managed the Indonesian government's family planning programs under the Suharto regime, and that, while in Indonesia, he espoused moderate Muslim beliefs through the MDI, or Counsel of Islamic Beliefs. Petitioner asserts that he fears for his safety because of the rise of extreme Muslim terrorist organizations, and his identity as a moderate Muslim and former Suharto official in charge of family planning programs. Specifically, petitioner notes that an organization known as Jemaah Islamiyah has bombed various locations in an effort to transform Indonesia into an Islamic theocracy, and that it has claimed responsibility for detonating a bomb in Bali in 2002, which killed many people.

We have jurisdiction over final orders of removal. 8 U.S.C. § 1252(a)(1). "Where the BIA renders its own decision and does not merely adopt the opinion of the IJ, we review the BIA's decision, not that of the IJ." Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (citation omitted). Under the substantial evidence standard, we will defer to the BIA's factual findings unless the evidence compels a contrary conclusion. Id. We exercise de novo review over constitutional claims. 8 U.S.C. § 1252(a)(2)(D); Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008).

Petitioner asserts that the BIA erred in concluding that he was not more likely than not to face persecution by Muslim extremists on account of his identity as a moderate Muslim ex-official in the Suharto regime. Petitioner submitted evidence of tension between Muslim extremists and moderate Muslims in Indonesia and a number of news

3

articles. Petitioner's expert testified that petitioner had "some justification" for fearing Muslim extremists, not on the basis of his moderate Muslim beliefs, but on the basis of his involvement in the Suharto regime. (A.R. 179.) According to the expert witness, the Suharto regime alienated many militant Islamic groups by restricting Islamic political parties and preventing the implementation of Islamic law. (Id.)

We do not believe that this testimony, or any other aspect of the record, compels a conclusion that petitioner faced a clear probability of persecution. Petitioner cites news articles about radical Islamic groups seeking to establish Islamic law in Indonesia; however, the articles fail to demonstrate that these groups have targeted moderate Muslims or former Suharto-regime officials as opposed to committing generalized violence and creating chaos.[2] We agree with the BIA that petitioner has not demonstrated a clear probability that he would be recognized as an ex-Suharto official so many years after the regime dissolved, nor has he demonstrated that the harm he would face would constitute persecution. Therefore, substantial evidence supports the BIA's decision.

We also do not believe that the IJ improperly denied petitioner's claim because of general civil strife in Indonesia.[3] Although petitioner correctly asserts that persecution

_____

[2]Petitioner also cites an article from Newsweek commenting on the tension between Muslim extremists and other Muslims. (Pet. Br., 14.) However, the article focuses narrowly on the Ahmadiyya sect of Islam. Petitioner's reliance on this article to demonstrate a large-scale assault by Muslim extremists on all moderates is misplaced. (A.R. 1028-1030.)

[3]Petitioner raised this argument before the BIA, but the BIA declined to address the argument explicitly. Under these circumstances, we may examine the IJ's opinion. See

4

may exist even in the context of generalized violence, we also note that generalized violence does not excuse the petitioner from demonstrating a nexus between the persecutory acts and a protected category. See Vente v. Gonzales, 415 F.3d 296, 301 (3d Cir. 2005) (asylum claim possible amidst general social unrest where applicant had received specific threats from paramilitary organizations accusing him of collaborating with guerillas). While petitioner construes the IJ's statements as evidence of confusion about whether petitioner was required to show he was "singled out" by Muslim extremists, it appears that the IJ was principally concerned by petitioner's failure to show a nexus between the Bali bombing of 2002 and petitioner's identity as a moderate Muslim and ex-official of the Suharto regime. Put another way, the IJ determined that petitioner had failed to show that the Bali bombing even partly targeted this group, let alone demonstrated a "clear probability" that petitioner would be persecuted. We do not believe that the record compels a contrary conclusion.

Petitioner also contends that the IJ violated due process by exhibiting bias against him and allegedly pre-judging the merits of his application. A non-citizen has a right to due process in a removal hearing, which means an opportunity to reasonably present his or her case. Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (citation omitted). Such claims require a showing of "substantial prejudice" to the non-citizen. Id. (citation

---

Joseph v. Att'y Gen., 421 F.3d 224, 226 n.4 (3d Cir. 2005) (referring to IJ's opinion to "provide the proper context and background" for analysis of the BIA's ruling).

omitted). Upon reviewing the record, we do not believe that the IJ pre-judged the timeliness of petitioner's asylum application,[4] nor did she exhibit bias against the petitioner or impermissibly fail to consider the evidence. The IJ's preliminary remarks merely placed petitioner on notice as to her doubts regarding the timeliness of his asylum application, as he filed the application almost nine years after arriving in the U.S., and that petitioner would be expected to address her concerns. Although the IJ demonstrated impatience with the petitioner at points during his testimony, we agree with the BIA that the IJ's frustration appears to have stemmed from petitioner's insistence on testifying in English alongside the court-appointed translator, who was appointed at petitioner's behest. We agree also with the BIA that the IJ's confusion as to petitioner's last residence in Indonesia caused no prejudice to petitioner. Nor do we believe that petitioner has raised any other meritorious issues.

For the aforementioned reasons, the petition for review will be denied.

---

[4]We note that the timeliness of petitioner's asylum application is not before us, nor would we have jurisdiction over the issue had petitioner raised it. Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006).