**IMG-156**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4369
_____

ATANAS ENTCHEV; MAYIA ENTCHEVA; ENISLAV ENTCHEV,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A073-178-406, A073-178-405, and A073-185-055)
Immigration Judges:  Honorable Annie S. Garcy and Honorable Daniel Meisner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 22, 2011

Before:  SCIRICA, FISHER and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed: June 23, 2011)
_____

OPINION
_____

PER CURIAM

1

Petitioners, Atanas Entchev, Mayia Entcheva, and Enislav Entchev (collectively, "petitioners"), natives and citizens of Bulgaria, petition for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will deny their petition.

I.

Atanas Entchev ("Entchev") entered the United States in August 1991 as a nonimmigrant exchange visitor on a J-1 visa. His wife, Mayia Entcheva, and son, Enislav Entchev, entered the United States in 1992 and 1993, respectively. They were authorized to remain in the United States until July 30, 1993. Before their authorization expired, the petitioners applied for asylum. Entchev argued persecution based on his political beliefs in opposition to the Communist party, which ruled Bulgaria until 1989. The former Immigration and Naturalization Service ("INS") did not grant relief. Instead, the INS issued orders to show cause charging the petitioners as deportable for overstaying their visas and transferred the case to the Immigration Judge ("IJ"). See 8 U.S.C. § 1227(a)(1)(B).

In 1997, following a merits hearing, the IJ ruled that the petitioners failed to establish eligibility for asylum and withholding of deportation, but granted voluntary departure. The BIA dismissed the petitioners' appeal, and the petitioners sought review in this Court. While their petition for review ("PFR") was pending, they filed a motion to reopen with the BIA based on the fact that Entchev was approved for an employment-based visa. In October 2002, the BIA granted the motion to reopen and remanded the

2

case to the IJ. Because the petitioners were no longer subject to a final order of deportation, this Court granted the Government's motion to dismiss the PFR. See C.A. No. 02-2631.

On remand before the IJ, the petitioners moved to continue the proceedings to give Entchev the chance to apply to the Department of State for a waiver of the foreign residence requirement imposed by 8 U.S.C. § 1182(e). A grant of the waiver would allow Entchev to apply for adjustment of status. In September 2009, the IJ denied the motion to continue, and the BIA subsequently dismissed the petitioners' appeal. This PFR followed.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen. of the United States, 400 F.3d 157, 162 (3d Cir. 2005). However, we review the decision of the IJ to the extent that the BIA defers to or adopts the IJ's reasoning. See Chavarria v. Gonzales, 446 F.3d 508, 515 (3d Cir. 2006). We review the BIA's denial of asylum and withholding of deportation for substantial evidence. See Ahmed v. Ashcroft, 341 F.3d 214, 216 (3d Cir. 2003); Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003). Under this deferential standard of review, we must uphold the BIA's findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001).

3

The petitioners first seek review of the BIA and IJ's denial of asylum and withholding of deportation. They argue that Entchev is entitled to asylum because he suffered past persecution and has a well-founded fear of future persecution on account of his political opinion in opposition to the Communist Party. See 8 U.S.C. § 1101(a)(42). In its decision denying asylum, the IJ explained that in Bulgaria Entchev received a good education, held a steady job even after resigning from the Communist Party and joining Podkrepa (a political organization opposed to Communism), was able to obtain a passport and freely leave and enter the country, and was not prevented by the Bulgarian government from participating in a United States government-sponsored fellowship program. Those facts, the IJ concluded, showed that Entchev did not suffer past persecution and did not have a well-founded fear of future persecution.

In dismissing the appeal, the BIA adopted the IJ's analysis and added an additional reason for denying asylum: even assuming that Entchev suffered past persecution, changed country conditions rebutted any presumption of a well-founded fear of future persecution. Relying on the 1996 Profile of Asylum Claims and Country Conditions ("Country Report"), the BIA concluded that the situation in Bulgaria had drastically improved since 1989 and that organizations such as Podkrepa were now openly part of the political process.

The petitioners argue that the BIA erred in dismissing their appeal. Specifically, they assert that the threats Entchev received from members of the Communist Party rose to the level of persecution, and that the BIA violated their due process rights by relying

4

on the 1996 Country Report in concluding there were changed country conditions in Bulgaria.

The petitioners' argument rests largely on the notion that Entchev received threats sufficient to establish past persecution. The first threats came during the 1990 elections when Entchev was threatened with "clearance" (i.e., death); threats that, by Entchev's own admission, he did not at first take seriously. Entchev claimed that as time went on he received more credible threats. At the IJ hearing, Entchev testified that a young coworker and a neighbor both threatened that Entchev would be "[paid] back" (i.e., jailed) for his political views. Entchev also testified that after he left Bulgaria, a uniformed person came looking for him at his apartment and told his mother-in-law that when Entchev returned he would be jailed.

For a threat – even a death threat – to constitute persecution, it must be more than sinister and credible; it must be highly imminent and concrete. See Chavarria, 446 F.3d at 518; Li, 400 F.3d at 164-65. It must be sufficiently menacing so as to cause significant actual suffering or harm. See Li, 400 F.3d at 164. Although disconcerting, the threats in Entchev's case were generalized, and do not appear to have resulted in significant actual suffering. Accordingly, substantial evidence supports the BIA and IJ's conclusion that Entchev did not establish past persecution.[1]

---

[1] To the extent that Entchev argues that he suffered past persecution due to economic harm, the argument fails. The record shows that Entchev held a steady job during his time in Bulgaria and did not have any substantial problems supporting himself or his family.

The petitioners also argue that the BIA violated their due process rights by analyzing country conditions in Bulgaria based on the Country Report because it was entered into evidence by the IJ rather than the Department of Homeland Security ("DHS") attorney at the IJ hearing. Aside from citing to general principles that DHS has the burden of establishing changed country conditions, see 8 C.F.R. § 208.13(b)(1)(ii), the petitioners do not explain how the Country Report's admission into evidence violated their rights. Regardless, because the petitioners did not object to the admission of the Country Report at the IJ hearing, their argument regarding the Country Report is waived and we will not rule on it in the first instance.

The Country Report provides strong support for the BIA's conclusion of changed country conditions. The Country Report paints a picture of Bulgaria as a country that significantly changed since the fall of Communism in 1989, and in which organizations like Podkrepa are now free to express their political viewpoints. Accordingly, substantial evidence supports the BIA's conclusion that country conditions in Bulgaria had changed such that Entchev could not demonstrate a well-founded fear of future persecution.

The petitioners also argue that the IJ and BIA erred in denying Entchev withholding of deportation. Because Entchev failed to establish eligibility for asylum, he also failed to establish the higher eligibility threshold required for withholding of deportation. Cf. Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004) (discussing withholding of removal).

III.

The petitioners also challenge the denial of their motion to continue. We review the denial of a continuance for abuse of discretion. See Khan v. Att'y Gen. of the United States, 448 F.3d 226, 233 (3d Cir. 2006). We will reverse only if the denial is arbitrary, irrational, or contrary to law. See id.

In 2002, the BIA granted the petitioners' motion to reopen and remanded their case to the IJ to allow Entchev to apply for adjustment of status based on an approved employment-based visa petition. Although Entchev had been approved for the visa, he also needed to fulfill the requirements of the J-1 visa program to be eligible for adjustment of status. Under the program, Entchev was required to either return to Bulgaria for two years after completing the exchange program or obtain a waiver ("§ 1182(e) waiver") of the requirement. See 8 U.S.C. § 1182(e).

Previous counsel filed a § 1182(e) waiver in 1997 that was denied. On remand, current counsel explained that he believed previous counsel had also filed a waiver application in 2001. At one of the initial hearings on remand the petitioners requested a continuance for time to look into the alleged 2001 waiver application and to prepare a new waiver application. The IJ granted a four month continuance. At the next two hearings, counsel explained that he had almost determined the status of the 2001 waiver application, but still needed additional time to find the information. Two more continuances were granted – one for a month and the second for an additional sixty days.

At the final hearing, counsel explained that he discovered that the Department of State had no record of the 2001 waiver application. He further explained that a visa

7

petition Entchev's daughter had filed based on her marriage to a United States citizen had been approved. Counsel had not yet filed a § 1182(e) waiver because he wanted to wait for Entchev's daughter to adjust status so he could include her as a lawful permanent resident ("LPR") family member in the waiver application. The IJ denied the motion to continue, reasoning that the petitioners had not presented evidence that a new waiver application would be substantially different from the 1997 waiver application that was denied.

The BIA held that the petitioners had not shown good cause for a continuance based on the following: Entchev had not yet received a § 1182(e) waiver and therefore was not yet eligible for adjustment of status; the 1997 waiver application had been denied; Entchev had not yet completed a new waiver application or submitted evidence that he was in the process of doing so; and during the six years between the BIA's 2002 remand order and the first IJ hearing on remand the petitioners never looked into the status of the 2001 waiver application.

The BIA's decision was not an abuse of discretion. At the final IJ hearing, the petitioners were unable to provide the IJ with any convincing reasons why a new waiver application would obtain a different result. The previous waiver application was based on a no objection letter from Bulgaria. See 8 U.S.C. § 1182(e). Based on counsel's representations at the IJ hearings, it appears that Entchev's new waiver application would be based on a combination of the no objection letter and a fear of persecution, which is

8

another ground for a waiver.  See id.  These are arguments that either were made or could have been made when Entchev filed his first waiver application.

At the final IJ hearing, counsel explained that the fact of the daughter's marriage to a United States citizen and pending adjustment of status would make a new waiver application substantially stronger than the previous one.  Under § 1182(e) another basis for waiver is if the alien's departure "would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen . . . or a lawfully resident alien)[.]"  As the petitioners' counsel admitted, however, Entchev's daughter is not a child for purposes of the Immigration and Nationality Act, because she is married.  See 8 U.S.C. § 1101(b)(1) ("The term 'child' means an unmarried person . . . ."); A.R. at 177. Accordingly, her pending adjustment of status does not create an additional basis for a § 1182(e) waiver.

Although the daughter's adjustment to LPR status may slightly strengthen Entchev's ties to the community, and as a matter of discretion the Department of State may therefore be more inclined to grant a waiver, it is far from clear that the status of Entchev's daughter as an LPR would result in a different outcome for a new waiver application.  Accordingly, the petitioners failed to put forward any persuasive reason why a new waiver application would result in a different outcome than the previous one.

Moreover, the motion to continue did not lay out a concrete timeline, and instead asked for a continuance for as long as it took for Entchev's daughter to adjust status. Even if the IJ had granted a continuance, once Entchev's daughter adjusted status

9

Entchev would still have had to request a further continuance for his waiver application to be adjudicated. Accordingly, Entchev offered "only the speculative possibility that at some point in the future" he would be eligible to adjust status based on his approved visa petition. Khan, 448 F.3d at 235 (internal quotation marks and citation omitted). Because Entchev did not adduce evidence that there was a greater likelihood a new waiver application would be granted and the motion to continue essentially requested an open-ended time period, the denial of the continuance was not an abuse of discretion.

IV.

Based on the above, we conclude that substantial evidence supports the BIA and IJ's decisions denying asylum and withholding of deportation, and that the BIA did not abuse its discretion by upholding the IJ's denial of the motion to continue. Accordingly, we will deny the Petition for Review.