NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1344
_____

MARTHA LUCIA YUNGA-TENECELA,
                                                  Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of
Orders from
the Department of Homeland Security and
the Executive Office for Immigration Review
(A098-916-788)
Immigration Judge: Carrie C. Johnson-Papillo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 9, 2020

BEFORE: HARDIMAN, GREENBERG, and SCIRICA, *Circuit Judges*

(Filed: November 16, 2020)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Martha Lucia Yunga-Tenecela petitions for review of an immigration judge's final order of removal based on her negative reasonable fear determination. We will deny the petition.

I

A citizen of Ecuador, Yunga-Tenecela was apprehended in Arizona after she entered the country illegally in 2005. An immigration judge ordered her removal to Ecuador on June 17, 2005. The following year, Yunga-Tenecela again entered the United States illegally and remained here until she returned to Ecuador in January 2013. Yunga-Tenecela tried to reenter the country illegally a third time on March 15, 2015, but was apprehended immediately near Rio Grande City, Texas. The Department of Homeland Security reinstated the June 17, 2005 removal order under 8 U.S.C. § 1231(a)(5).

Yunga-Tenecela expressed fear of returning to Ecuador, so she was interviewed by a DHS asylum officer. She told the asylum officer that she feared her ex-boyfriend, Juan Nieves, would kill her if she returned to Ecuador. Yunga-Tenecela began dating Nieves in 2008, while living in the United States Nieves was deported to Ecuador in 2012, but the couple reunited when Yunga-Tenecela returned to Ecuador in 2013. The couple had one child together while in the United States and had another child in Ecuador. Yunga-Tenecela left Ecuador in 2015 after her relationship with Nieves deteriorated. Nieves became violent towards Yunga-Tenecela; he would slap her and threaten to kill her and her children because he wanted to see other women and to hide the fact that he had a family with her. After separating from Nieves, Yunga-Tenecela was robbed and

2

threatened by two men, and in 2019 two men told her mother they would kill Yunga-Tenecela if she returned to Ecuador. Yunga-Tenecela believes that Nieves was behind the robbery and the recent incident with her mother.

The asylum officer found Yunga-Tenecela credible, but made a negative reasonable fear determination because Yunga-Tenecela failed to show that any persecution she might suffer in Ecuador would be on the basis of a protected characteristic or that she would be subject to torture by or with the acquiescence of a public official.

At Yunga-Tenecela's request, the IJ held a hearing to review the asylum officer's negative reasonable fear determination. At the start of the hearing, Yunga-Tenecela's counsel requested an adjournment so she could submit a police report being sent from Ecuador that recounted the threats made to Yunga-Tenecela's mother. The IJ denied the request. At the close of the hearing, the IJ concurred with the asylum officer's negative reasonable fear determination because "conflicts of a personal nature do not constitute persecution on account of an enumerated ground," and because Yunga-Tenecela "expressed no fear of torture [by] government officials or those acting in an official capacity." A.R. 29.

## II

We have jurisdiction to review the IJ's negative reasonable fear determination under 8 U.S.C. § 1252(a)(1), as it is a final removal order. *See Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018) (the immigration judge's concurrence with the asylum officer's negative reasonable fear determination as to an alien previously removed

3

constitutes a final removal order by operation of 8 C.F.R. § 208.31(a), (f), and (g)(1)).

We review legal and constitutional issues de novo. *Duhaney v. Att'y Gen.*, 621 F.3d 340, 345 (3d Cir. 2010). We review the IJ's negative reasonable fear determination under the substantial evidence standard, which requires us "to uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

III

Yunga-Tenecela first argues the IJ denied her due process of law by refusing to adjourn the hearing so she could obtain and submit the police report from Ecuador. We disagree.

To succeed on a due process claim, Yunga-Tenecala must show that the denial of process "prevented [her] from reasonably presenting [her] case," *Khan v. Att'y Gen.*, 448 F.3d 226, 236 (3d Cir. 2006) (quoting *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002)). She also must show "substantial prejudice." *Khan*, 448 F.3d at 236 (quoting *Anwar v. I.N.S.*, 116 F.3d 140, 144 (5th Cir. 1997)).

Yunga-Tenecela sought the adjournment to give her time to submit a police report detailing recent threats against her. As the IJ explained, that report would bolster Yunga-Tenecela's credibility. But because Yunga-Tenecela's credibility was not at issue, there was no reason to wait for the report. Besides, the exclusion of the police report was not prejudicial because the threats, as observed by the IJ, were of a personal nature and unrelated to any of the five protected grounds for relief (race, religion, nationality,

4

political opinion, or membership in a particular social group). *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015); 8 C.F.R. § 208.31(c).

Yunga-Tenecela also claims she demonstrated a reasonable fear of persecution because of her membership in a particular social group (victims of domestic violence). We disagree for two reasons. First, to establish a cognizable particular social group, an alien must show that the group "is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). The record is devoid of such evidence. *See also Matter of A-B-*, 27 I. & N. Dec. 316, 320 (A.G. 2018) (victims of domestic violence will rarely constitute a cognizable particular social group), *abrogated on other grounds by Grace v. Barr*, 965 F.3d 883, 905–06 (D.C. Cir. 2020). Second, we have held that "[c]onflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic." *Gonzalez-Posadas*, 781 F.3d at 685.

For these reasons, we perceive no error in the IJ's determination that Yunga-Tenecela's problems with Nieves are personal and unrelated to her membership in a particular social group.

Nor does Yunga-Tenecela show error in the IJ's determination that she failed to establish a reasonable possibility of torture should she be removed to Ecuador. For an act to constitute torture under the Convention Against Torture, it must, among other things, be "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d

5

Cir. 2005). Neither Nieves nor his alleged accomplices are government officials. And in her petition, she neither points to evidence nor argues that government officials would have "actual knowledge of" or be "willfully blind to" Nieves's torturous actions. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 65 (3d Cir. 2007)). So Yunga-Tenecela is not entitled to relief under the CAT.

\* \* \*

For the reasons stated, we will deny Yunga-Tenecela's petition for review.